In the Matter of the ESTATE of Freddie
E. WAGNER, Deceased.

Berta R. MILLER, Shirley Green and
Lola Hayden, Plaintiffs and
Appellants,

v.

Lee Evelyn KRAFT, Individually and as
Executrix of the Estate of Freddie E.
Wagner, Donald J. Collings, Eugene A.
Collings, Thomas E. Collings, Kenneth
G. Collings, Katherine Collings, Ellen
Vandeberg, special guardian for Connie
Collings, Peggy Collings and Valerie
Brenden; Betty I. Collings, and Avis
Williamson, Defendants and Appellees.

Civ. No. 9403.

Supreme Court of North Dakota.

April 13, 1978.

Rolfstad, Winkjer, McKennett, Kaiser &
Stenehjem, Williston, for plaintiffs and ap-
pellants; argued by Dean Winkjer, Willi-
ston.

McIntee & Whisenand, Williston, for de-
fendants and appellees; argued by Michael
R. McIntee, Williston.

SAND, Justice.

This is an appeal from a Williams County
district court judgment based on a jury
verdict finding the 1973 will of Freddie E.
Wagner valid and not the result of undue
influence, and from an order denying a new
trial.

Initially, the 1973 will of Freddie E. Wagner was admitted to probate by the Williams County court with increased jurisdiction acting in its probate court capacity. Thereafter Berta R. Miller, Shirley Green and Lola Hayden [hereinafter contestants] filed a petition to revoke probate or in the alternative to impress a constructive trust. The Williams County court, after a trial, held that the 1973 will of Freddie Wagner was the result of undue influence and accordingly revoked the probate of the 1973 will and admitted the earlier 1970 will of Freddie Wagner to probate.

Lee Evelyn Kraft, et al. [hereinafter proponents] appealed the Williams County court judgment to the Williams County district court, where the parties became entitled to a trial anew. (Section 30–26–23, North Dakota Century Code.) The proponents in the district court moved for a summary judgment to dismiss the "action" of the contestants on the grounds that certain jurisdictional requirements had not been met. The motion for summary judgment was denied. The contestants, in their appeal to the district court, demanded a trial by jury.

The jury rendered a verdict for the proponents of the will, whereupon judgment was entered. The contestants then made a motion for a new trial, which the court denied. This appeal followed.

A brief summary of background information will be helpful in understanding the situation.

In 1938, Freddie E. Wagner, a 30-year old bachelor, married Ruth B. Collings, a widow who was the mother of five children, namely, Berta Collings Miller, Shirley Collings Green, Lola Collings Hayden, Conrad Collings, and Glen Collings. Only one child, Lee Evelyn Wagner Kraft, was born to this marriage. They all lived as a family on a farm in the vicinity of Ray, and later moved into Williston.

Freddie E. Wagner treated the children of Ruth Collings as his own. In 1970 he executed a will substantially leaving everything to his wife Ruth, and if she did not survive him to his natural daughter Lee and his stepchildren and stepgrandchildren in equal share per stirpes. His wife, Ruth Collings Wagner, died in 1973 after a long illness. Conrad Collings, a divorced man, was killed in an automobile accident on 22 May 1973. Glen Collings died in 1964. After the death of his wife, Freddie E. Wagner, on 30 May 1973, executed a second will leaving his entire estate to Lee Evelyn Kraft, his only child. Freddie E. Wagner died 21 November 1974, whereupon the 1973 will was filed for probate, bringing about the sequence of legal actions culminating in an appeal to this court.

The contestants, on appeal, primarily contend that the trial court erred by not giving the following instruction:

"UNDUE INFLUENCE—PROOF OF SPECIFIC CONDUCT AND INFLUENCE FROM FIDUCIARY RELATIONSHIP

"The Petitioners may establish undue influence as ground of invalidity in two ways.

"First, they may introduce proof of specific conduct alleged to constitute undue influence.

"Second, they may establish undue influence as a ground of invalidity by proving each of the following propositions:

1. That Freddie E. Wagner reposed trust and confidence in Lee Evelyn Kraft and her husband, Larry Kraft, to such an extent that Lee Evelyn Kraft and Larry Kraft could have exerted undue influence, as I have defined that term, on the mind of Freddie E. Wagner.

2. That Larry Kraft, the husband of Lee Evelyn Kraft, prepared or caused the preparation of the document purporting to be the Last Will and Testament of Freddie Wagner.

3. That Lee Evelyn Kraft, the wife of Larry Kraft, received a substantial benefit under the terms of the document.

"If you find that the Petitioners have proved undue influence by evidence of specific conduct, then your verdict should be for the Petitioners.

"If you find that each of the three propositions has been proved, the law raises an inference or suspicion that the document was executed as a result of undue influence and the Respondents [proponents] then have the burden of going forward with the evidence to overcome the inference of undue influence.

"If the Respondents [proponents] do not overcome the inference of undue influence, then your verdict should be for the Petitioners [contestants].

"If any of the three propositions has not been proved, or if you believe from all the evidence in the case that, even though the three propositions have been proved, the document was nonetheless executed as the free and voluntary act of Freddie E. Wagner, then your verdict should be for the Respondents [proponents]." [Illinois Pattern Jury Instruction No. 200.03, *Stormon v. Weiss*, 65 N.W.2d 475 (N.D.1954)] [1]

The following instruction was given:

"A testator, not subjected to undue influence, may dispose of his property as he wishes without regard to the desires of prospective beneficiaries or the views of juries or courts.

"Every testator has the right to change the manner of disposing of his property, and in the absence of undue influence, his changed will is valid.

"A Will must be a true expression of the testator's wishes. If, instead, it is the product of undue influence of another, it must be denied probate on that ground. To be 'undue,' the influence must amount to coercion destroying free agency of the testator, substituting for his own another's will and compelling the testator to make a disposition he would not otherwise have made.

"The word 'undue' should be emphasized, because the law does not condemn all influence. It condemns only that degree of intrusion which destroys the testator's own judgment and volition. Accordingly, probate will not be denied because a testator was influenced by affection, gratitude, family and personal relationships, or ordinary advice and argument. These motivating factors commonly enter into a testator's consideration and are proper, because they do not deprive the testator of his own free will.

"The elements necessary to be established to warrant the rejection of a will on the ground of undue influence are:

"One, that the testator was subject to such influence; and

"Two that the opportunity to exercise it existed; and

"Three, that there was a disposition to exercise it; and

"Four, that the result appears to be the effect of such influence.

"While undue influence need not be exerted at the time of the execution of the will, it must be operative at the time of execution in order to affect validity of the will.

"To be undue the influence must operate at the time the will is made and must dominate and control the making of the will. The influence must be such as to make the will express the purpose and intent of the person exercising the influence and not the purpose and intent of the testator.

"If, adhering to these instructions, you find that the will signed by Freddie Wagner on May 30, 1973, was not the result of undue influence, then you must return a verdict in favor of the Defendants, upholding the validity of that will.

"On the other hand, if, adhering to these instructions, you find that the will signed by Freddie Wagner on May 30, 1973, was the result of undue influence, then you must return a verdict in favor of the Plaintiffs, denying the validity of that will."

The contestants made several arguments in support of their position.

1. This was given as authority for the instruction. The *Stormon* case, however, does not support it.

They basically argued that whenever evidence has been introduced that a confidential relationship existed between a party and the testator, and that the same party participated in the preparing of the will in question, and is to receive a substantial benefit by the terms of the will, a presumption of undue influence arises which shifts the burden of proof to the party preparing the will. They argued that in *Stormon* [*Stormon v. Weiss*, 65 N.W.2d 475 (N.D. 1954)] the court did determine that under certain facts and circumstances an inference or presumption was proper. They correspondingly contend there was sufficient evidence to justify a presumption or an inference of undue influence in this case and that by the court's refusal to give the requested instruction an unfair burden of proof was placed upon the contestants.

The contestants posed the rhetorical question, What then is an inference? and quoted from 1 Weinstein's Evidence ¶ 300[01] (Matthew Bender 1977) p. 300–2,[2] after which they argued that by

". . . applying the current North Dakota evidentiary law [3] to *Stormon*, contestants submit that the 'inference' applied in *Stormon* would be classified today as a 'presumption', for in *Stormon*, this court held that the burden of going forward with the evidence was shifted to the proponent. Weinstein says: 'In describing what a presumption does, all agree that a presumption has the proce-

dural consequence of shifting the burden of proof. *Weinstein, supra,* p. 300–2."

The contestants submitted that it is time for this court to clarify its holding in *Stormon* and to establish and

". . . adopt the universally accepted rule that undue influence is presumed and the burden of proof shifted to the proponent where the contestant has shown (1) a confidential relationship between the proponent and the testator; (2) participation in the preparation or procurement of the Will of the testator; (3) a substantial bequest or benefit to the proponent by the terms of that Will."

In conclusion, the contestants argued that regardless of whether or not this court adopts the general rule in all cases "just as this court applied the presumption rule to the facts present in *Stormon*, it should have been applied by the trial court in the instant case."

■ The new Rules of Evidence, contrary to suggestions of contestants, do not adopt or create any presumptions nor do they create any inferences. They merely provide the manner or means by which an established presumption is made operative or effective at a trial. The language in Rule 301, "if facts giving rise to a presumption are established by credible evidence," particularly the word "presumption" refers to those previously established by law. This language in substance means that the

**2.** "It follows that an inference is not a presumption. In the case of an inference, the existence of B *may be deduced* from A by the ordinary rules of reasoning and logic (see discussion of relevancy under Rule 401); in the case of a presumption, the existence of B *must initially be assumed* because of a rule of law. Since B follows from A because of a procedural rule and not because of an intervening hypothesis, there is not attenuation of probabilities as there would be if B were inferred from A because of an evidential hypothesis . . . ."

**3.** We must assume contestants meant the new Rules of Evidence which were promulgated on 1 December 1976 to be effective 15 February 1977. Rule 301 relates to presumptions and provides as follows:

"(a) Effect. In all civil actions and proceedings not otherwise provided for by stat-

ute or by these rules, if facts giving rise to a presumption are established by credible evidence, the presumption substitutes for evidence of the existence of the fact presumed until the trier of fact finds from credible evidence that the fact presumed does not exist, in which event the presumption is rebutted and ceases to operate. A party against whom a presumption is directed has the burden of proving that the nonexistence of the presumed fact is more probable than its existence.

"(b) Inconsistent presumptions. If presumptions are inconsistent, the presumption applies that is founded upon weightier considerations of policy. If considerations of policy are of equal weight neither presumption applies."

party wishing to rely upon a presumption created by law must first introduce credible evidence to establish the presumption before it will be effective. The North Dakota Rules of Evidence did not supersede any of the numerous presumptions created by the Legislature, many of which may be found in Chapter 31–11, NDCC.

Some difficulty exists in attempting to provide a simple definition of the terms "presumption" and "inference," as is evidenced by the statement in American Law Institute, *Model Code of Evidence*, "Presumption," on page 306:

> "Courts and textwriters use the word presumption, loosely and with various meanings. In all cases they are describing a legally recognized connection between two situations each consisting of a fact or group of facts. Whether the presumption is the legal process by which the result is reached, or the term by which the rule stating the result is designated, or just what part of the process, or result, or rule it does indicate is the subject of much confusing discussion the utility of which it is often difficult to discover."[4]

However, 1 Weinstein's Evidence ¶ 300[01] (Matthew Bender 1977) page 300–2, clearly points out that an inference results from the ordinary rules of reasoning and logic, whereas a presumption results from a rule of law. To state it in another way, reason and logic create inferences, whereas law creates presumptions.

■ "Presumption" and "inference" are often used synonymously. 31A C.J.S. *Evidence* § 115, p. 198. The same authority, however, continues by stating that distinctions may be drawn between presumptions and inferences. The fundamental characteristic of a presumption as distinguished from an inference is that a presumption affects the duty of producing further testimony, not merely the weight of that already produced. The distinction can be made in that an inference is a permissive deduction, while a presumption is a deduction directed to be drawn by law.

While many other definitions or distinctions may exist regarding presumptions and inferences in other jurisdictions or in other circumstances or situations, the foregoing distinction is especially applicable to North Dakota, which uses the statutory presumptions.

The contestants' argument that the inference stated in *Stormon* should now be treated as a presumption is novel but not persuasive. It is based on faulty syllogism. Merely because an inference or a presumption may shift the burden of going forward with the evidence it does not establish that the two are the same.

We can, however, recognize that the contestants may have been misled by the following statement in the *Stormon* case:

> "The contestants challenge the validity of the will upon the ground of undue influence. Theirs was the burden to sustain this challenge, which they attempted to do by showing that the will under which the proponent was the sole beneficiary, to the exclusion of sisters of the testatrix, was drawn by the proponent, an attorney who had at various times over a period of years advised the testatrix on legal matters and who was the husband of the testatrix's niece; that the terms of the will were not disclosed until after the

---

4. The same authority, on page 314, also stated:

   "A presumption, to be an efficient legal tool, must (1) be left in the hands of the judge to administer, and not be submitted to a jury for decision of the question when it is 'rebutted' or ceases to have compelling force; (2) be so administered that the jury never hear the word presumption used since it carried unpredictable connotations to different minds; and (3) be embodied in a rule easy of application by the judge in the hurry of trial."

   This court has also stated that a presumption is a rule of law as to which party shall first properly go forward with the evidence to prove an issue. *Johnson v. Johnson*, 104 N.W.2d 8 (N.D.1960).

   See also, *Psaty v. United States*, 442 F.2d 1154 (3d Cir. 1971) wherein Judge Learned Hand was quoted as follows: "That if the trial is properly conducted the presumption will not be mentioned at all." *Alpine Forwarding Co. v. Pennsylvania Railroad Co.*, 60 F.2d 734, 736 (2d Cir. 1932).

death of the testatrix, when it was produced by the proponent, in whose possession it had remained from the time of its execution. These facts and circumstances cast upon the proponent the burden of going forward with the evidence to overcome the inference of undue influence to which they gave rise." *Stormon v. Weiss*, 65 N.W.2d 475, 519.

The contestants may also have been misled because of the special concurring opinion in *Stormon* stating that there was an inference or presumption of undue influence present in the case.

We now consider whether this court should adopt the presumption as submitted by the contestants.

Without repeating some of the discussions on the other argument, we rely heavily upon the statement by the eminent Justice Morris in *Stormon*:

"We have never considered whether a presumption of undue influence arises from the fact that an attorney draws a will under which he takes a substantial benefit. We have no statutory presumption applicable to this situation. Our careful study of the cases and texts dealing with this question leads us to the conclusion that we should not by judicial precedent establish a rule that a presumption of undue influence invariably arises from the fact that a will is drawn for a client by an attorney who becomes a major beneficiary under the will. The conditions under which such wills might be drawn could conceivably differ so greatly that a presumption in one case would serve the ends of justice but in another would be an impelling force in the creation of injustice." *Stormon v. Weiss*, 65 N.W.2d at 517.

This court in effect said that if a presumption is to be created providing that undue influence is presumed whenever the attorney who drew the will is also directly or indirectly a substantial beneficiary under the will it should be accomplished by a legislative act rather than by a judicial decree. This statement was made twenty years ago. We are not aware that the Legislature has even seriously considered enacting a law creating such a presumption. While the *Stormon* decision was by a divided court, two supporting the basic opinion, one specially concurring in the basic opinion, and two dissenting, the statement by Justice Morris relating to presumptions, as set out above, was agreed to by all five Justices.

We also take note of the presumption against a trustee, which was enacted by the Legislature by § 59–01–16, NDCC, which states:

"All transactions between a trustee and his beneficiary during the existence of the trust or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration and under undue influence."

However, the husband of Lee Evelyn Kraft was not in a position of trustee either actually or constructively.

■ Under these circumstances we do not believe that this court should now alter its position and create a presumption by judicial decree. Furthermore, the factual distinctions between the *Stormon* case and this case are such that the comments made in the *Stormon* case upon which the contestants rely would not apply in the present case. Not only did the contestants know about the will but also, according to the testimony, one or more attempted to influence the testator to change the will. (The law does not condemn all influence, only undue influence.)

The disposition of the property in Wagner's 1973 will was not unnatural. In the 1973 will the beneficiary was not a stranger to Wagner but was his only daughter, who would have inherited the property if no will had been left.

There is a further difference between this case and the *Stormon* case. In the *Stormon* case the attorney at various times advised the testatrix, whereas in the instant

case the attorney, the son-in-law (not a stranger) involved gave advice only with reference to the manner in which the 1970 will could be revoked if that were the wish or intent of the testator and how the new will should be drawn to accomplish this, leaving all of the property to his natural daughter and revoking the 1970 will. There was evidence that the testator unsuccessfully sought to obtain the 1970 will from his attorney's office, but the attorney was not there and his secretary had instructions not to give it out before consulting with the attorney. Also, the will was shown to a second attorney for comments as to its effect, who advised the testator accordingly.

On the final argument that this court should in any event apply the presumption "just as this court applied the presumption rule to the facts present in *Stormon*," we must observe that the court in *Stormon* did not apply a presumption nor did it use the terms "presumption" and "inference" interchangeably. The court merely said in the *Stormon* case that from the facts in the case an inference of undue influence existed casting a burden upon the proponents to go forward with evidence to overcome the inference. It did not say a presumption existed. More specifically, the court declined to apply a presumption, saying that "we [the court] should not by judicial precedent establish a rule that a presumption of undue influence invariably arises from the fact that a will is drawn for a client by an attorney who becomes a major beneficiary under the will." This is a matter for the Legislature.

■ A presumption is more than a procedural proposition as to who has the burden to go forward with the evidence. Whenever the trier of facts finds the weight of the evidence to be 50–50, the side having the legal presumption will prevail.

On the proposition that this court should now adopt the presumption in this case, we have concern that by establishing a pre-sumption by judicial decree the litigants would be put in an awkward position. The adoption of a presumption by judicial decree now would change a rule of law after the fact, whereas if the presumption is created by the legislature the parties would have advance notice of the change and could act accordingly, which the present litigants could not do if we were to adopt a presumption by judicial decree in this case. We are not implying that this court will at no time adopt a presumption by judicial action. However, as to this case the factual situation as a whole does not warrant, nor does it create, a judicial or equitable necessity for the adoption of the rule of presumption suggested by the contestants in this case.

Case law in other states that have presumptions of undue influence, after establishing certain basic facts, is not persuasive in the absence of a similar presumption in this state.

■ The existence or nonexistence of undue influence is a question of fact [*In re Estate of Elmer*, 210 N.W.2d 815 (N.D. 1973)] for the jury, the trier of facts [*Keller v. Reichert*, 49 N.D. 74, 189 N.W. 690 (1922); *Black v. Smith*, 58 N.D. 109, 224 N.W. 915 (1929)]. A mere suspicion of undue influence is not sufficient to require submission of the question of undue influence to the jury or to sustain a verdict.

The court in this case did submit the question of undue influence to the jury and the jury returned a verdict of no undue influence. The court gave an instruction on undue influence which was not questioned. We are aware that some terms or words in certain situations are difficult or impossible of being fully defined and may fail to convey their full or true meaning. Similarly, the written or spoken words alone, except in ideal settings, are generally inadequate to fully communicate and express comprehensively the abstract legal concepts, principles, and theories involved in every situation, and consequently interstices and im-

precisions in the law may result. Whenever abstract legal theories are applied to man-made situations they should be tempered with practical understanding and experience. The jury, through its collective wisdom, provides this practical function. We must respect the jury in these practical matters.

The sufficiency of the evidence to support the verdict was not challenged, however the evidence amply supports the jury's verdict.

The judgment based upon the jury verdict and the order denying a new trial are affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.