Anne R. KRONEBUSCH, Personal Representative of the Estate of Gerald L. Kronebusch, Deceased, Plaintiff and Appellant,

v.

Ilah M. LETTENMAIER and Calvin T. Lettenmaier, Defendants and Appellees.

Civ. No. 10019.

Supreme Court of North Dakota.

Oct. 15, 1981.

Tim G. Bryan, Casselton, for plaintiff and appellant.

Stephan & Stephan, Valley City, for defendants and appellees; argued by L. A. W. Stephan, Valley City.

SAND, Justice.

This is an appeal by the plaintiff, Anne R. Kronebusch [Anne] from a district court judgment in favor of the defendants, Ilah M. Lettenmaier [Ilah] and Calvin T. Lettenmaier [Calvin], in an action which sought to cancel and set aside a warranty deed which conveyed certain real estate from Anne's husband, Gerald L. Kronebusch [Gerald], to Anne, Ilah, and Calvin.

Anne is the surviving spouse and sole heir of Gerald. She is also the personal representative of his estate. Ilah and Calvin are the sister and brother-in-law, respectively, of Gerald. On 6 July 1978, at the age of 51, Gerald died at the Veterans' Hospital in Fargo, North Dakota, as a result of a hepa-

titic coma and alcohol-induced liver cirrhosis. He entered the V.A. Hospital on 3 June 1978, and on 15 June, 1978, he executed a warranty deed which conveyed the following land located in Barnes County to Anne, Ilah, and Calvin:

The East half (E ½) of Section Eleven (11), in Township One Hundred Forty (140) North of Range Sixty (60) West of the Fifth Principal Meridian, in Barnes County, North Dakota.

Anne, Ilah, and Calvin each received a one-third interest in the land. The value of the interest in the land received by Ilah and Calvin was found by the trial court to be $100,000. Although Gerald received no direct compensation for the land, at the time of his death he was indebted to Ilah and Calvin in the amount of $20,000 which was secured by a mortgage on the land.

The complaint, in substance, alleged that Gerald's consent to the execution of the warranty deed was obtained because of the unfair advantage taken by Ilah and Calvin of Gerald's weakness of mind and health; and that business and financial ties between Gerald and the Lettenmaiers, coupled with their family relationship, placed the Lettenmaiers in a confidential and trusted position with Gerald which they abused. Ilah and Calvin's answer, in substance, asserted that no undue influence was used to procure the execution of the deed and that the transfer was entered into freely and voluntarily by Gerald.

After a bench trial the district court entered findings of fact which in relevant part stated that the relationship between Ilah and Calvin was "good and close" and that although Gerald was seriously ill he was mentally competent and executed the deed freely and voluntarily without undue influence from Ilah and Calvin. Pursuant to these findings, the district court entered judgment dismissing Anne's complaint. Anne subsequently moved the district court to make certain amendments to the findings of fact. Although some of Anne's proposed amendments were approved by the district court, the district court refused

to amend its finding that a "good and close" relationship existed between Gerald and the Lettenmaiers to reflect a finding that a confidential relationship existed. Anne then appealed from the judgment to this Court.

The first issue raised by Anne is that the finding of a "good and close relationship" is the same as a "confidential" relationship, and that such a finding requires a shifting of the burden of production to Ilah and Calvin to rebut a presumption of undue influence in the execution of the warranty deed. Anne asserts that the Lettenmaiers' position of trust with Gerald placed them in a fiduciary relationship with duties analogous to that of a trustee toward his beneficiary.[1] Further, Anne's counsel asserts that the "statement that the deed was made 'without undue influence' is a conclusion of law and that the remaining facts are *not sufficient* to rebut the presumption raised by the existence of a confidential relationship."

In *Mehus v. Thompson*, 266 N.W.2d 920, 926 (N.D.1978), we said:

"The Mehus heirs correctly point to *Johnson v. Johnson*, 85 N.W.2d 211 (N.D.1957), as imposing a burden on the grantee once a confidential relationship with the grantor is established. The grantee then bears the burden of showing the following three elements: '[1] That the deed was freely and voluntarily made; [2] that ... [the grantor] knew what he was doing when he executed the deed; and [3] that no such fraud or undue influence exists to warrant its cancellation.' *Johnson v. Johnson, supra*, at 225."

■ However, a prerequisite to imposing a burden on the grantees is a finding of confidential relationship between the grantor and grantee. In this respect we note that the district court denied Anne's motion to amend its finding of "a good and close" relationship to reflect a finding of a "confi-dential" relationship. In this instance we do not believe a "good and close relationship" can be elevated to the status of a "confidential" or "fiduciary" relationship. Nor do we believe the factual circumstances of this case establish a confidential relationship.

The evidence shows the Lettenmaiers and Gerald were closely associated as a family as well as in their business relations. Gerald rented his land to the Lettenmaiers on a 70–30 percent sharecrop basis. Gerald's 30% share of the crop was delivered to the elevator, at which time he assumed complete control over it. The Lettenmaiers loaned Gerald money on several occasions, and at the time of his death he was indebted to Ilah and Calvin in the amount of $20,000 which was secured by a mortgage on the land. A portion of this debt was incurred when Calvin paid the real estate taxes on Gerald's land. Additionally, on one occasion the Lettenmaiers paid a fuel bill for Gerald. The Lettenmaiers also put up bail for Gerald on two occasions after he was arrested for DWI. Further, they provided transportation for Gerald to alcoholism treatments in St. Cloud, Minnesota, and Fargo, as well as for appointments with the dentist.

Although these facts, depending upon how they are viewed, may lend some support to a finding of a "confidential" or "fiduciary" relationship, similarly the same facts also support a finding that the relationship was nothing more than that of friendship and kindness on the part of the Lettenmaiers in providing assistance to Gerald. Furthermore the record does not reflect the Lettenmaiers were in a trustee-beneficiary relationship toward Gerald.

Because the evidence supports the trial court's finding of a "good and close relationship" between the Lettenmaiers and Gerald, we conclude that finding is not clearly erroneous pursuant to Rule 52(a),

---

1. In this respect NDCC § 59–01–16 provides as follows:

"All transactions between a trustee and his beneficiary during the existence of the trust or while the influence acquired by the trustee re-mains, by which he obtains any advantage from his beneficiary, are *presumed* to be entered into by the latter without sufficient consideration and under undue influence." [Emphasis added.]

North Dakota Rules of Civil Procedure. Accordingly, the burden did not shift to the Lettenmaiers to establish that the deed was freely and voluntarily entered; that Gerald knew what he was doing when he executed the deed; and that no undue influence existed.

However, even if a confidential relationship existed between the Lettenmaiers and Gerald, the evidence reflects that the Lettenmaiers have carried their burden to show that the deed was voluntarily executed and was not a product of undue influence.

In *Johnson v. Johnson*, 85 N.W.2d 211, 221 (N.D.1957), we delineated the following three factors involved in establishing undue influence:

"1. A person who can be influenced.

"2. The fact of improper influence exerted.

"3. Submission to the overmastering effect of such unlawful conduct."

 Whether or not undue influence exists is a question of fact. *Mehus, supra*, at 926. The law does not condemn all influence, only undue influence. *Matter of Estate of Wagner*, 265 N.W.2d 459 (N.D.1978). A mere suspicion of undue influence is not sufficient. *Matter of Estate of Wagner, supra*.

 With respect to the execution of the warranty deed, the testimony of Calvin reflects that Gerald initiated the conversation concerning the transfer of the land. Calvin, Ilah, and their daughter, Leanne Lettenmaier, were present in Gerald's hospital room during the conversation. Calvin's testimony indicates that Gerald originally wanted to deed the land to only the Lettenmaiers; however, Calvin testified that he told Gerald he would not take the land unless Anne was included as a grantee. Calvin contacted Gerald's attorney, L. A. W. Stephan in Valley City, to prepare the deed. Calvin drove to Valley City to get the deed from Stephan and returned later the same afternoon to have it signed by Gerald. The deed was signed in the presence of Calvin, Ilah, Leanne, Carl Elofson (V.A. attorney and notary), and a nurse. The evidence indicates that after the deed was signed Gerald said, "That is the way I want it," and gave the deed to Calvin. Gerald subsequently asked Calvin if the deed had been taken care of, and Calvin replied that he had taken care of the deed. Furthermore, the evidence discloses that although Gerald was physically ill, he was described as alert and mentally competent during this period of time. Calvin's testimony concerning the circumstances leading up to the signing of the deed was corroborated by Ilah and Leanne. However, neither Elofson or the nurse testified at the trial.[2]

These factual circumstances surrounding the signing of the deed do not reveal an overmastering by the Lettenmaiers, nor do they reveal improper influence. Further, these circumstances are consistent with the general assistance provided through the years to Gerald by the Lettenmaiers.

The trial court found that Gerald was mentally competent and that he executed the deed freely and voluntarily without undue influence from the Lettenmaiers. These findings are supported by the evidence, and applying NDRCivP Rule 52(a), these findings are not clearly erroneous.

Accordingly, the judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.

---

2. Either of the parties could have subpoenaed Elofson or the nurse to appear at trial. Rule 45, NDRCivP.