In the Matter of the ESTATE OF Lucy POLDA, Deceased.

Chester POLDA, Petitioner and Appellee,

v.

Ernest POLDA, Maxine Gutzmer, Donna Hohenstern, and Shirley Wahler, Respondents and Appellants,

Jean Hohenstern, Respondent.

Civ. No. 10547.

Supreme Court of North Dakota.

April 24, 1984.

Lanier, Knox & Olson, Fargo, for petitioner and appellee; argued by P.W. Lanier, Jr., Fargo.

Pancratz, Yuill, Wold, Johnson & Feder, P.O., Fargo, for respondents and appellants; argued by J. Philip Johnson, Fargo.

Christian M. Anderson, Wahpeton, for Estate of Lucy Polda, Deceased.

ERICKSTAD, Chief Justice.

Ernest Polda, Maxine Gutzmer, Donna Hohenstern, and Shirley Wahler appeal from the orders of the County Court of Richland County admitting to probate the will of Lucy Polda and appointing Chester Polda personal representative of the estate. We affirm.

Lucy Polda died on May 24, 1983. She was survived by six children—Ernest Polda, Maxine Gutzmer, Donna Hohenstern, Shirley Wahler, Chester Polda, and Jean Hohenstern. On May 31, 1983, Chester filed an Application for Informal Probate of Will and Appointment of a Personal Representative.

Ernest, Maxine, Donna, and Shirley filed objections to probate of the will and appointment of Chester as personal representative. The objections were based upon allegations of failure to execute the will in accord with statutory requirements, lack of testamentary capacity, and undue influence.

Lucy Polda executed her will on February 6, 1980. At the time, she was living alone in the family farm home. Chester and his wife lived in a separate home on the farmstead, and they provided care and assistance to Lucy. Chester also managed Lucy's business operations.

When Lucy informed Chester that she wanted him to have the household furnishings in the family farm home, Chester suggested that she have a will prepared. He arranged for Donald Wieber, an attorney from Forman, to come to the farm and

discuss this with Lucy. Wieber prepared a will according to Lucy's instructions, and she executed it on February 6, 1980. The will was witnessed by Wieber and his brother, David. The will provided Donna, Shirley, Jean, and Maxine with small cash bequests, and Chester was given the remainder of the estate.[1]

By agreement of the parties, the informal probate was converted to a formal probate, and a petition for formal probate of the will was filed on July 21, 1983. The matter was heard before the County Court of Richland County on July 26, and on August 22 the court issued its Order Admitting Will to Probate and Appointment of a Personal Representative. On September 6, the court issued its Order for Formal Probate of Will and Letters Testamentary.

Ernest, Maxine, Donna, and Shirley appeal from the court's orders. They contend that the court failed to make essential findings of fact; that, if the court did make findings, such findings are clearly erroneous; that the court applied an incorrect legal standard to determine undue influence; that the court erred in holding that no publication of the will or declaration of testamentary intent was necessary; and that the court erroneously treated the matter as an informal probate proceeding.

The appellants contend that the court failed to make essential findings of fact to support its orders. The court's findings and conclusions are contained in the Order Admitting Will to Probate and Appointment of a Personal Representative.[2] The findings and conclusions are as follows:

"The document was admitted for consideration by the Court and with the testimony and the document it is the opinion of the Court that the criteria demanded in NDCC Secion [sic] 30.1–08–02 has [sic] been met.

"The Court finds no evidence of undue influence and no evidence that Lucy Polda was mentally incompetent at the time that the Will was executed. The Court finds that Petitioner's Exhibit # 2 is the Last Will and Testament of Lucy Polda and that Chester Polda is qualifed [sic] to act as Personal Representative, according to the terms of the Will."

The remainder of the court's "order" consists of a detailed description of the testimony. We have previously stated that a recitation of the evidence does not constitute appropriate findings of fact. *Peterson v. Hart,* 278 N.W.2d 133, 136 (N.D.1979).

We were presented with a similar problem in *Gross v. Sta-Rite Industries, Inc.,* 322 N.W.2d 679 (N.D.1982). In *Gross,* the findings of fact merely outlined the evidence on both sides of the disputed issues of fact. We held, nevertheless, that a meaningful review is possible if we are able to determine the factual basis for the trial court's ultimate decision:

"However, although the findings of fact and conclusions of law should be stated with sufficient specificity to assist us and afford us a clear understanding of the trial court's decision, we have indicated that if we understand from the findings the factual basis for the trial court's determination, the findings are adequately specified. *Park View Manor, Inc. v. Housing Authority of Stutsman County,* 300 N.W.2d 218 (N.D. 1980). Thus, although findings of fact could be more definite, this alone does not make them erroneous. *Schmidt v. Plains Elec., Inc.,* 281 N.W.2d 794 (N.D. 1979). As we indicate in our following

---

1. The estate consisted almost entirely of cash and personal effects. By the terms of her deceased husband's will, Lucy received a life estate in the farm realty. Upon her death, the real property passed to the children according to the terms of Mr. Polda's will.

2. Although denoted an order, this was more in the nature of a memorandum opinion. It contained a summary of the testimony and included the court's findings of fact and conclusions

of law. It therefore complies with the requirements of Rule 52(a), which permits the findings and conclusions to be included in a written opinion or memorandum of decision. We have previously upheld findings and conclusions which were contained in an order. *First Trust Co. v. Conway,* 345 N.W.2d 838, 843 (N.D.1984); *Clement v. Clement,* 325 N.W.2d 262, 263 (N.D. 1982).

discussion, we believe the findings are adequate to permit us to understand the factual basis for the trial court's determination."

*Gross, supra,* 322 N.W.2d at 682. Similarly, we noted in *Winter v. Winter,* 338 N.W.2d 819, 822 (N.D.1983): "Although appellate review is significantly more simple when findings of fact are prepared which clearly disclose the basis of the trial court's determinations, judicial economy requires this court to accept less than artfully drafted findings."

■ Although the court's findings include recitals of the testimony and conclusory findings, we conclude that, upon a full review of the findings in light of the record and the transcript, we are able to ascertain the basis of the trial court's decision. Therefore, the findings of fact are adequate and a remand to the county court is unnecessary. *See, e.g., Tuff v. Tuff,* 333 N.W.2d 421, 424 (N.D.1983); *Clement v. Clement,* 325 N.W.2d 262, 263 (N.D.1982).

Although the court stated that there was "no evidence of undue influence and no evidence that Lucy Polda was mentally incompetent," we conclude that the basis for the court's decision was that the evidence was insufficient to support a finding of either undue influence or mental incompetence. It is further apparent from the court's conclusions that it found that no undue influence was exerted and that Lucy Polda was mentally competent at the time she executed the will.

The appellants next contend that the trial court failed to apply the proper legal standards for determining whether or not undue influence was exerted upon Lucy Polda. They urge that, pursuant to our opinion in *In re Estate of Elmer,* 210 N.W.2d 815, 820 (N.D.1973), direct evidence of exertion of influence is unnecessary, and that undue influence may be established by proof of the following four elements: the opportunity to exercise undue influence, the disposition to exercise it, the susceptibility of the decedent to the exercise of

undue influence, and a result which appears to be the effect of undue influence. *See also Okken v. Okken,* 325 N.W.2d 264, 267–68 (N.D.1982); *In re Burris' Estate,* 72 N.W.2d 884, 889 (N.D.1955).

■ The existence or nonexistence of undue influence is a question of fact. *Okken v. Okken, supra,* 325 N.W.2d at 267; *Quandee v. Skene,* 321 N.W.2d 91, 94 (N.D.1982); *Matter of Estate of Thomas,* 290 N.W.2d 223, 226 (N.D.1980). The burden of proof is upon the contestants to sustain this challenge. *Matter of Estate of Thomas, supra,* 290 N.W.2d at 226. We agree that, in an appropriate case, proof of all of the factors noted above may be sufficient to support a finding of undue influence. We have repeatedly held, however, that when the evidence raises a mere suspicion of undue influence it is insufficient to require submission of the question of undue influence to the jury or to sustain a verdict. *Matter of Estate of Thomas, supra,* 290 N.W.2d at 226; *Matter of Estate of Wagner,* 265 N.W.2d 459, 465 (N.D. 1978); *Bender v. Bender,* 72 N.W.2d 220, 223 (N.D.1955). Evidence which merely shows that a party who benefited by the will had both motive and opportunity to exert influence over the testator is not sufficient to invalidate a will where there is no evidence that such influence was actually exerted. *Bender, supra,* 72 N.W.2d at 224.

■ The evidence presented by the appellants to support their allegation of undue influence indicates that Chester made arrangements for the attorney to come to the farm; that there were conflicts between Chester and the appellants; that Lucy was totally dependent on Chester to attend to her personal and business needs; and that the will provided only modest bequests to the four daughters and left nothing to Lucy's son, Ernest.[3] Under the circumstances of this case, we conclude that this evidence at best raises a mere suspicion of undue influence. We therefore con-

---

**3.** The attorney who drafted the will, Donald Wieber, testified that Lucy had explained that

Ernest had been provided for in her husband's will.

clude that the trial court's finding of no undue influence is not clearly erroneous. Rule 52(a), N.D.R.Civ.P.

The appellants also contend that the court failed to take into account a fiduciary relationship between Chester and Lucy which raises a presumption of undue influence. The appellants cite *Matter of Estate of Mehus*, 278 N.W.2d 625 (N.D.1979), to support their argument. In *Mehus*, we held, pursuant to Section 59–01–16, N.D. C.C., that there is a presumption of undue influence when an agent obtains a benefit in a transaction with his principal. In *Mehus*, the appellant was acting as co-attorney-in-fact for his mother.

■ In *Matter of Estate of Thomas, supra*, we made it clear that the presumption recognized in *Mehus* applied only when the beneficiary was a trustee, agent, or attorney-in-fact. *Matter of Estate of Thomas, supra*, 290 N.W.2d at 227. We also noted that we had "rejected the argument that whenever a confidential relationship exists between a party and the testator, coupled with that same party participating in the preparation of the will and receiving a benefit by its terms, a presumption of undue influence arises which shifts the burden of proof." *Matter of Estate of Thomas, supra*, 290 N.W.2d at 227; *Matter of Estate of Wagner, supra*, 265 N.W.2d at 462–65.

If we were to adopt the presumption urged by the appellants, it would have the effect in some cases of unfairly burdening the party who takes care of the decedent during the later years in life. In the instant case, the appellants urge that we place the burden upon Chester to prove that he did not unduly influence Lucy in the preparation of her will solely because he was the one who assisted her in business matters and attended to her personal needs. We decline to adopt a presumption which would, in effect, punish the party who has cared for an elderly parent.

■ The appellants also contend that the trial court's finding that Lucy was mentally competent at the time she executed her will is clearly erroneous. Testamenta-

ry capacity is a question of fact. *Matter of Estate of Koch*, 259 N.W.2d 655, 658 (N.D. 1977); *In re Estate of Rask*, 214 N.W.2d 525, 530 (N.D.1974). Sanity and testamentary capacity are presumed, and the burden of proving otherwise is upon the contestant. *Matter of Estate of Thomas, supra*, 290 N.W.2d at 225. We have thoroughly reviewed the record and we conclude that the court's finding that Lucy had testamentary capacity at the time she executed her will is not clearly erroneous. Rule 52(a), N.D.R.Civ.P.

■ The appellants next contend that the court erred in holding that no publication or communication of testamentary intent was necessary. They urge that our decision in *Matter of Estate of Thomas, supra*, requires that the testator "publish" or declare that the document to be signed is her will.

The appellants have misread our decision in *Thomas*. The basis for our holding in *Thomas* was that the will in question had been executed in 1971, before the adoption of the Uniform Probate Code (Chapter 30.1, N.D.C.C.), and therefore the formal validity of the will had to be determined by looking to the law at the time of its execution. We therefore applied the prior law regarding execution of wills, Section 56–03–02, N.D. C.C. (repealed 1973), which required that the testator declare to the attesting witnesses that the instrument was his will.

Lucy's will was executed in 1980, and its validity is therefore governed by Section 30.1–08–02, N.D.C.C. [U.P.C. § 2–502]:

"*30.1–08–02 (2–502). Execution.*—Except as provided for holographic wills, writings within section 30.1–08–13, and wills within section 30.1–08–06, every will shall be in writing signed by the testator or in the testator's name by some other person in the testator's presence and by his direction, and shall be signed by at least two persons, each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will."

The Editorial Board Comment to Section 30.1–08–02 makes it clear that there is no "publication" requirement:

> "The formalities for execution of a witnessed will have been reduced to a minimum.... There is no requirement that the testator publish the document as his will, or that he request the witnesses to sign, or that the witnesses sign in the ·presence of the testator or of each other."

The court did not err in holding that publication of the will was unnecessary.

 Finally, the appellants contend that the court erroneously treated the proceeding as an informal probate. They point to the following language in the court's Order Admitting Will to Probate: "On the 31st day of May, 1983, one Chester Polda filed an Application for Informal Probate of Will and Appointment of himself as the Personal Representative." We conclude that the trial court was merely reciting a procedural feature of the case, and was not indicating that the matter was to be treated as an informal probate.

It is clear that the matter was treated as a formal probate by the court, counsel, and the parties. The appellants were provided a full opportunity to call witnesses and present testimony on the issues they had raised. The court ruled on each of the objections raised by the appellants, and its final order is entitled "Order for Formal Probate of Will."

Our view is further supported by the record, which shows that, although a petition for informal probate had originally been filed, it was converted to a formal probate by agreement of the parties and a petition for formal probate of the will was filed on July 21. At the beginning of the July 26 hearing, counsel for the appellants waived notice of the substituted formal petition and consented to hear the matter as a formal probate.

The matter was clearly treated as a formal proceeding, notwithstanding the court's reference to the filing of the petition for informal probate.

The orders of the county court admitting the will to probate and appointing Chester Polda personal representative of the estate of Lucy Polda are affirmed.

SAND, GIERKE, PEDERSON and VANDE WALLE, JJ., concur.