This is an appeal by Thomas Stanchfield from an order of the District Court of Towner County, dated August 1, 1983, admitting to probate the last will and testament of Gleford Stenerson, dated June 12, 1979, upon the court's determination that the will was validly executed and not the result of undue influence. The 1979 will *Page 142 
was initially admitted to probate by the County Court of Towner County acting in its probate court capacity. Thomas appealed from the county court's order to the district court which, based upon de novo proceedings, entered its order affirming the county court's decision to admit the will to probate. We affirm.
Gleford died during May, 1982. His wife predeceased him, he had no children, and his sole surviving heirs-at-law were fourteen nephews and nieces including the appellant, Thomas.
Gleford's 1979 will was drafted by Attorney David Garcia, who testified in relevant part:
 "Q. Did you feel that he was competent?
 "A. Yes.
 "Q. Why do you feel that? What gave you that impression?
 "A. Well, I knew the decedent approximately 20 years so I saw him every year and took care of his taxes. I was quite familiar with his attitudes and his ways of doing business and he appeared to be no different than he had been in previous times when he has executed other documents in my presence or that I worked with him."
Under the 1979 will, Gleford bequeathed his estate, with an estimated value of $500,000, to his wife. The will provided that in the event Gleford's wife predeceased him the entire estate was bequeathed to Danny Ray Olson, Wayne C. Rutherford, and Wayne Weeda to be used by them "in support of and furtherance of the gospel." Olson was designated by the will to be the personal representative for the estate in the event that Gleford was predeceased by his wife.
Olson, Rutherford, and Weeda were members of a religious group to which Gleford belonged for most of the years of his life. Gleford knew Olson from the time Olson was born, and they were very close friends. However, Rutherford and Weeda were mere acquaintances of Gleford. Rutherford had visited with Gleford approximately a half dozen times within the ten years prior to Gleford's death, and Weeda, although present at a few religious group functions which Gleford attended, had no recall of ever having visited with Gleford.
The religious group, to which Gleford and the three beneficiaries under his will belonged, did not have a descriptive name. Sunday worship services and mid-week Bible studies were conducted in the homes of designated members, and Gleford attended those sessions faithfully.
Gleford's sister-in-law, Edith Naline, who was also a member of the religious group, testified that, "the only fellowship he had, the only friends we had, were our friends with the gospel." She testified that the members of the religious group were very close with a spiritual influence to help each other see "what God would want them to do," but that members of the group never discussed financial matters or ever attempted to influence Gleford, or any other member, relative to distributing one's property after death. Edith was present when Gleford and his wife, Edith's sister, executed their wills. At that time, they told Edith that "there was nothing they wanted to do with it except to give it in the hands to those that would take of it to further the gospel." In essence, Edith responded that she was glad they could do that.
Olson testified that Gleford never discussed with him the subject of bequeathing his property except on one occasion when Gleford approached Olson to ask if he could name Olson in his will. Olson responded that it would be okay. Both Rutherford and Weeda testified that Mary Naline, Edith's sister who was a traveling minister with the religious group, asked them, on Gleford's behalf, if it would be okay for Gleford to name them in his will with the understanding that the property they received would be used in support of the gospel. Their response, in essence, was that they had no objection if that was Gleford's intent.
On appeal, Thomas asserts that the proponents of Gleford's 1979 will should have *Page 143 
the burden of proving by a clear preponderance of evidence that the will was not executed as a result of undue influence. Thomas asserts that this case represents an exception to the general rule that a contestant of a will has the burden of proof, because the beneficiaries under Gleford's will occupied a fiduciary relationship as religious advisors to Gleford.
Under Section 30.1-15-07, N.D.C.C., a will contestant has the burden of proof to establish undue influence. The will contestants in the Matter of Estate of Wagner, 265 N.W.2d 459
(N.D. 1978), urged this Court to hold that the proponent of the will, an attorney who drafted the will and whose spouse was a beneficiary under the will, had the burden of proof to establish that the will was not the result of undue influence. In rejecting the will contestants' request to place the burden of proving lack of undue influence on the will proponents, Justice Sand, writing for a unanimous Court, stated:
 "This court in effect said [in Stormon v. Weiss, 65 N.W.2d 475 (N.D. 1954)] that if a presumption is to be created providing that undue influence is presumed whenever the attorney who drew the will is also directly or indirectly a substantial beneficiary under the will it should be accomplished by a legislative act rather than by a judicial decree. This statement was made twenty years ago. We are not aware that the Legislature has even seriously considered enacting a law creating such a presumption.
 * * * * * *
 "Under these circumstances we do not believe that this court should now alter its position and create a presumption by judicial decree.
 * * * * * *
 "We are not implying that this court will at no time adopt a presumption by judicial action. However, as to this case the factual situation as a whole does not warrant, nor does it create, a judicial or equitable necessity for the adoption of the rule of presumption suggested by the contestants in this case." 265 N.W.2d at 464-465.
As in Wagner, supra, the factual situation in this case does not warrant the adoption of a presumption by judicial decree which would shift the burden of proof regarding the issue of undue influence to the will proponents. We conclude, therefore, that Thomas, as the contestant to Gleford's 1979 will, carried the burden of proving that the will was the result of undue influence.
Thomas asserts on appeal that the district court erred in its determination that there was no undue influence. The elements necessary to invalidate a will on the ground of undue influence are (1) that the testator was subject to such influence; (2) that the opportunity to exercise it existed; (3) that there was a disposition to exercise it; and (4) that the result appears to be the effect of such influence. E.g., In re Burris' Estate,72 N.W.2d 884 (N.D. 1955). To be undue, the influence must dominate and control the making of the will such as to make the will express the purpose and intent of the person exercising the influence rather than the testator's purpose and intent.Okken v. Okken Estate, 348 N.W.2d 447 (1984); Bender v. Bender,72 N.W.2d 220 (N.D. 1955).
The determination of whether or not a testator was unduly influenced is a question of fact. Matter of Estate of Wagner,265 N.W.2d 459 (N.D. 1978). That determination, when made by the district court as finder of fact, will not be set aside unless it is clearly erroneous. Rule 52(a), N.D.R.Civ.P.
The testimony by Edith Naline and the three beneficiaries under the will is that at no time did anyone attempt to persuade or influence Gleford to bequeath his property in any manner or to any group or persons. That testimony is entirely unrefuted in this case. Thomas, as the will contestant, did not present testimony or other evidence showing the exertion of undue influence by any person upon Gleford *Page 144 
causing Gleford's will to express the purpose and intent of someone other than Gleford himself. A mere suspicion is not sufficient to support an allegation of undue influence.Matter of Estate of Wagner, 265 N.W.2d 459 (N.D. 1978); see also,Kronebusch v. Lettenmaier, 311 N.W.2d 32 (N.D. 1981).
Having reviewed the record, we conclude that the district court's finding that Gleford's 1979 will was not the product of undue influence is not clearly erroneous.
Edith Naline was appointed as personal representative for the estate. On appeal, Thomas has asserted that "if the decedent's will is declared invalid" Thomas is entitled to priority for appointment as personal representative. In view of our determination that the district court properly admitted Gleford's 1979 will into probate, we deem this issue to have been conceded.
In accordance with this opinion, the order of the district court is affirmed.
ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur. *Page 441