In the Matter of the ESTATE OF Roy Edward MICKELSON, Deceased.

**Paula Jean ROGERS, Petitioner and Appellant,**

v.

**James Roy MICKELSON, Respondent and Appellee.**

Civ. No. 900407

Supreme Court of North Dakota.

Nov. 15, 1991.

Lyle G. Witham (argued), Towner, Leo F.J. Wilking (argued), Nilles, Hansen & Davies, Ltd., Fargo, for petitioner and appellant.

Mary K. O'Donnell (argued), Rolla, for respondent and appellee.

GIERKE, Justice.

This is an appeal from an order of the County Court of Rolette County, which admitted to probate the will of Roy Mickelson dated December 9, 1989. The county court determined that the will was validly executed, not the product of undue influence and that the testator had testamentary capacity. We affirm.

The appellant, Paula Rogers (hereinafter Paula), is the daughter of Roy Mickelson (hereinafter Roy) and the sister of James Mickelson (hereinafter Jim). Roy had one other son and four other daughters. Roy was known to have a loving relationship with all of his children. However, Jim was the only child who lived in the Rolla area where Roy resided. Jim had farmed with his father for the last 15 years. Under Roy's will Jim received all of Roy's estate.

The facts are that on the morning of December 9, 1989, Roy Mickelson was not feeling well and asked his son, Jim, to come to his home. There was evidence that Roy may have fallen out of bed and that he had some pain in his hand throughout the morning. When Jim arrived, he noticed nothing wrong with his father. When he asked his father what was wrong, his father replied, that "it was just stress". According to the testimony of Jim, he and his father talked for awhile and then Roy began to write out a will which left Jim five quarters of land. Jim suggested that Roy contact an attorney and, ultimately, Roy directed Jim to call Bruce Gibbens in Cando. Jim initially spoke with Mr. Gibbens and then Roy spoke with Mr. Gibbens discussing the disposition of his property. Mr. Gibbens then drafted the will and drove with his wife and son to Roy Mickelson's home, some 40 miles away.

After Mr. Gibbens arrived, Roy showed him around the house. Roy noticed that Mrs. Gibbens was in the car and asked if she could come and witness the will. Roy telephoned Alphonse Guilbert, a neighbor and father-in-law of Jim, to be a second witness for the will. Mr. Guilbert had known Roy for more than 10 years. Guilbert testified that he didn't notice anything unusual about Roy when the will was signed. Although Mr. and Mrs. Gibbens were not acquainted with Roy, they also testified that they noticed nothing to indicate that he was suffering from a stroke. The testimony indicated that Roy reviewed the will and indicated his approval by his signature.

The will executed by Roy Mickelson on December 9, 1989 stated:

"II

"I give, devise and bequeath all of the rest of my property, real personal and mixed, wheresoever located, to my son, James Roy Mickelson, to have and to hold as his property absolutely excepting from this grant, however, those bequests of my tangible property as I shall make pursuant to Section 30.1–08–13 of the North Dakota Century Code.

"III

"I specifically acknowledge that I have other children, but have omitted them from this will intentionally, and I specifically acknowledge that they shall receive nothing under the terms of this will."

Approximately 15 to 20 minutes after the will had been signed, Roy's face began to droop and he showed some major physical symptoms of a stroke. An ambulance was summoned and he was taken to the Rolla hospital. He was subsequently air-lifted to St. Lukes hospital in Fargo, where he passed away on January 29, 1990.

Roy was a farmer, who was actively farming until he took ill on December 9, 1989. Roy was divorced and had seven adult children, all of whom he had a normal relationship with prior to his death. Roy

had property which consisted of 5 quarters of land and custom combining machinery. However, Roy had experienced some financial difficulties and was in substantial debt at the time of his death.

When Jim was 15 years old, he quit school and began working with his father full time. At the time of his death, Roy had farmed with his son, Jim, for approximately 15 years. They had an oral partnership agreement. Roy contributed his land, machinery, and labor, while Jim contributed some machinery and labor. They shared expenses equally and Jim received one-third of the income while Roy received the remaining two-thirds. Roy also had a custom combining business which Jim helped him operate.

The Honorable Lester Ketterling heard this case at the Rolette County Courthouse, in June of 1990. The county court specifically found:

"1. * * *

"2. That the will executed by Roy Edward Mickelson on December 9, 1989, and witnessed by two persons was properly executed.

"3. That at the time of signing said will Roy Edward Mickelson had testamentary capacity to make said will.

"4. That James Mickelson did not have a confidential relationship with Roy Mickelson.

"5. That at the time of making said will Roy Edward Mickelson was not under any undue influence."

Paula asserts that the county court order should be reversed for three reasons: 1) That a close personal and business relationship existed between Jim and Roy Mickelson and that the court erred in failing to apply a presumption of undue influence as found in Section 59–01–16 of the N.D.C.C.; 2) that the court erred in not finding any undue influence; and 3) that there was insufficient evidence to support the court's finding of testamentary capacity.

█ Paula argues that because of the close business and personal relationship between Roy and Jim Mickelson, a confiden-

tial relationship existed. North Dakota Century Code Section 59–01–08 states:

"One assuming relation of personal confidence is trustee. Everyone who voluntarily assumes a relation of personal confidence with another is deemed a trustee within the meaning of this chapter not only as to the person who reposes such confidence, but as to all persons of whose affairs he thus acquires information which was given to such person in the like confidence, or over whose affairs he, by such confidence, obtains any control."

North Dakota Century Code Section 59–01–16 states:

"Presumption against trustee. All transactions between a trustee and his beneficiary during the existence of the trust or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration and under undue influence."

Paula's argument assumes that Section 59–01–16, N.D.C.C., applies to will contest cases. We have not previously so applied that section. We recognize that some other states do apply a presumption in will contests but we are not persuaded to do so. Our prior opinions regarding Section 59–01–16, N.D.C.C., have dealt with some estate cases. However, those cases can be distinguished from the case at hand.

Several of the cases failed to find that the beneficiary who was taking under the will was in a position of trustee, agent or attorney-in-fact. *See Matter of Estate of Thomas*, 290 N.W.2d 223 (N.D.1980); *Matter of Estate of Wagner*, 265 N.W.2d 459 (N.D.1978).

The case of *Matter of Estate of Polda*, 349 N.W.2d 11 (N.D.1984), involved a son who had arranged for his mother to see an attorney about writing a will. The son, who had taken care of his mother, suggested that she make a formal will. He received the bulk of the estate under the will. The testator's other children argued that because of the fiduciary relationship between the testator and the son, a presump-

tion of undue influence should be applied. This court rejected this argument quoting from *Matter of Estate of Thomas, supra.*

"We also noted that we had 'rejected the argument that whenever a confidential relationship exists between a party and the testator, coupled with the same party participating in the preparation of the will and receiving a benefit by its terms, a presumption of undue influence arises which shifts the burden of proof.'"

*Matter of Estate of Polda,* 349 N.W.2d at 15 (quoting *Matter of Estate of Thomas,* 290 N.W.2d at 227).

Therefore, because we hold that the making of a will is not the type of transaction contemplated in Section 59–01–16, N.D.C.C., there is no presumption to be applied in will contest cases.[1]

Furthermore, North Dakota has sufficient case law which establishes the criteria required for finding undue influence in a will contest. *See, Matter of Estate of Stenerson,* 348 N.W.2d 141, 143 (N.D.1984); *Okken v. Okken,* 325 N.W.2d 264, 267–69 (N.D.1982); *In re Burris' Estate,* 72 N.W.2d 884, 889 (N.D.1955).

■ Appellant's second contention is, that even without the benefit of a presumption of undue influence, there was sufficient evidence to establish that Jim exerted undue influence on his father. Paula contends that Jim exerted undue influence when he was alone with Roy on the morning of December 9, 1989, resulting in Roy making a will which left all of his property to Jim and disinherited his other six children.

North Dakota law provides that contestants of a will have the burden of establishing lack of intent or capacity as well as undue influence. 30.1–15–07 N.D.C.C. Will contestants must prove undue influence at the time of the execution of the will. *Matter of Estate of Stenerson,* 348 N.W.2d 141, 143 (N.D.1984).

"To be undue, the influence must operate at the time the will is made and must dominate and control the making of the will; it must be such as to make the will express the purpose and intent of the person exercising the influence and not the purpose and intent of the testator."

*Matter of Estate of Herr,* 460 N.W.2d 699, 702 (N.D.1990) (quoting *Okken v. Okken Estate,* 348 N.W.2d 447, 450 (N.D.1984) (citations omitted).

■ The elements necessary to invalidate a will on the ground of undue influence are (1) that the testator was subject to such influence; (2) that the opportunity to exercise it existed; (3) that there was a disposition to exercise it; and (4) that the result appears to be the effect of such influence. *Matter of Estate of Stenerson, supra* (citing *In re Burris' Estate,* 72 N.W.2d 884 (N.D.1955)).

■ The determination of undue influence is a fact question and must be decided by the fact finder. *Mehus v. Thompson,* 266 N.W.2d 920, 926 (N.D.1978). Undue influence must be sufficiently proven, a mere suspicion is not enough. *Matter of Estate of Herr,* 460 N.W.2d 699, 702 (N.D.1990); *Matter of Estate of Polda,* 349 N.W.2d 11, 14 (N.D.1984); *Matter of Estate of Wagner,* 265 N.W.2d 459, 465 (N.D.1978).

The county court recognized the required elements necessary to establish undue influence as set out above. The court recognized that Jim had the opportunity to influence Roy because he was with him the morning of December 9, 1989. The court recognized that some testimony indicated that Roy believed that Jim wanted everything.

However, there was sufficient evidence to support the court's conclusion that Roy was not susceptible to undue influence. The testimony indicating that Roy was "his own boss", and that he would do only what he wanted to do, led the court to conclude that Roy was not susceptible to the influence of Jim. The court found no evidence to indicate that Roy's mental processes were impaired at the time the will was

---

1. *See In the Matter of the Estate of Ambers,* 477 N.W.2d 218 (N.D.1991), where we held that without more, we would not apply a presumption of undue influence against a person who received benefits under a will and had been issued a power of attorney by the testator.

executed. Also, the court questioned whether Jim was disposed to influence his father.

The court also found that there was a reasonable explanation for the disposition of all of Roy's property to Jim. Roy Mickelson was in substantial debt. He may have wanted the farming operation to continue and believed that by giving all of the property to Jim the farm could be saved. Therefore, the result does not in and of itself indicate undue influence.

The trial court heard the testimony and evaluated the evidence presented on this issue and found no undue influence. We will not substitute our judgement for that of the trial court. The court below had the opportunity to evaluate the credibility of all the testimony presented and its determinations should be given great deference. *In re Estate of Rask*, 214 N.W.2d 525, 531 (N.D.1974).

Finally, appellant argues that Roy Mickelson lacked the necessary testamentary capacity on December 9, 1989 due to the fact that he was in the early stages of a massive stroke. Appellant urges that the will should be invalidated because Roy could not have had the ability, nor did he demonstrate the ability to know his property or the natural objects of his bounty. Appellant asserts that the early signs of a stroke that morning rendered Roy unable to rationally deal with the disposition of his estate.

Four witnesses testified to Roy's testamentary capacity at the time the will was signed. The trial court heard and evaluated the testimony by all of those present at the execution of the will. All of the witnesses testified to the alertness of the testator. Although there were some physical symptoms of a stroke exhibited by Roy that morning, the medical doctor testified that he could not give a definitive opinion regarding Roy's mental condition at the time the will was signed.

It is a well established principle the capacity of a testator is presumed and the party contesting the will has the burden of proving incapacity. *Matter of Estate of*

*Thomas*, 290 N.W.2d 223, 225 (N.D.1980). The finding of testamentary capacity is a question of fact. *Matter of Estate of Polda*, 349 N.W.2d 11, 15 (N.D.1984).

The court specifically found that the testator had the mental capacity to make a will. Findings of fact are clearly erroneous if, on review, we are left with a firm conviction that a mistake has been made at the lower court. *Herb Hill Insurance, Inc. v. Radtke*, 380 N.W.2d 651, 653 (N.D.1986). We find no such mistake in this case. Therefore, the order of the county court is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.