**In the Matter of the ESTATE OF Clifton A. HERR, Deceased.**

**Alberta H. CATES, Appellant,**

v.

**Charles PFEIFER, Personal Representative of the Estate of Clifton A. Herr, Deceased, Appellee.**

**Civ. No. 900020.**

Supreme Court of North Dakota.

Sept. 5, 1990.

---

Garaas Law Firm, Fargo, for appellant; argued by Jonathan T. Garaas. Appearance by David A. Garaas.

Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, Minn., for appellee; argued by Barry P. Hogan.

MESCHKE, Justice.

Alberta H. Cates appealed from a summary judgment dismissing her objection to the formal probate of Clifton Herr's will and her demand for an intestate share of Clifton's estate as his only natural child. We affirm in part, reverse in part, and remand for further proceedings.

Cates was born on October 18, 1941. Cates' mother, Lenora Bender, claimed that Clifton was Cates' father. Although Clifton initially contested paternity, a judgment was entered in 1942 in Cass County in which he admitted that he was Cates' father and agreed to pay Lenora $525 as a complete settlement of his support obligation. Cates and Lenora then moved out of state and they had no contact with Clifton until 1959 when Lenora attended a high school reunion in North Dakota. Clifton declined to see Lenora or Cates then, and they made no other attempts to contact Clifton during his lifetime.

In 1954 Clifton married Dorothy Herr, who had three daughters, Karla Gross, Sharon Pfeifer, and Patricia Hiller, by previous marriages. Clifton and Dorothy had no children from their marriage, and Clifton told relatives that he was sterile. Clifton did not adopt Dorothy's daughters, but on May 26, 1981, he executed an application for insurance which stated that they were "children of the marriage of Clifton & Dorothy Herr."

In 1986, Clifton hired attorney Richard Herr, a second cousin, to revise a 1978 will. Clifton's wife, Dorothy, died in December 1987. Clifton's final will, executed on May 12, 1987, after several meetings with Richard Herr, made twenty-five specific devises and named Gross, Pfeifer, and Hiller as residuary beneficiaries of his estate. Gross, Pfeifer, and Hiller were also residuary beneficiaries under the 1978 will. Neither will mentioned Cates.

Clifton died on May 7, 1988, at age 74, with an estate valued at over $2,000,000. Cates objected to the probate of Clifton's 1987 will, alleging that it was void because he lacked testamentary capacity, or because it was the product of undue influence or mistake. As his sole natural child, Cates sought to void the will so that she would take his entire estate in intestacy since there was no surviving spouse. She claimed that she was entitled to an intestate share of Clifton's estate under NDCC 30.1–06–02 as a pretermitted child, and that she was entitled to family or exempt property allowances as provided by statute. She also demanded a jury trial.

Clifton's estate moved for summary judgment. The trial court concluded that factual issues raised by Cates were "not contested, or [were] not material to the legal issues involved" and that "reasonable minds could not differ in their conclusion that Clifton ... never intended to include ... Cates in his Will." The court dismissed Cates' objection to the formal probate of Clifton's 1987 will.

We review under the standards applicable to summary judgment. Summary judgment is a procedural device to promptly and expeditiously dispose of an action without a trial if there is no dispute as to material facts or the inferences to be drawn from undisputed facts, or when only a question of law is involved. *Wheeler v. Schmid Laboratories, Inc.*, 451 N.W.2d 133 (N.D.1990). On appeal from a summary judgment, we view the evidence in the light most favorable to the party against whom summary judgment was granted. *Id.*

Cates contends that the court erred in granting summary judgment because genuine issues of material fact existed. She asserts that those material facts included that Clifton did not recognize her as his

only natural child [1] and did not name her in his will; that Clifton believed he was sterile; and that Clifton did not realize that his stepchildren were "merely stepchildren and not natural children" on an application for insurance. She argues that those facts raised genuine issues of material fact that Clifton lacked testamentary capacity to execute the 1987 will, or that it was the product of mistake or undue influence.

To begin, we examine Cates' claim that there are genuine issues of material fact about whether the 1987 will was the product of undue influence. She argues that the "method of preparing the will which included the active participation of Herr's wife, coupled with the result of disinheriting the deceased's only child, makes it a jury question as to whether the elements of undue influence exist."

In *Okken v. Okken Estate*, 348 N.W.2d 447, 450 (N.D.1984), we outlined the elements necessary to invalidate a will on the ground of undue influence:

(1) that the testator was subject to such influence; (2) that the opportunity to exercise it existed; (3) that there was a disposition to exercise it; and (4) that the result appears to be the effect of such influence. *Okken v. Okken*, supra, 325 N.W.2d [264] at 267–68 [N.D.1982]; *In re Burris' Estate*, 72 N.W.2d 884, 889 (N.D. 1955). To be undue, the influence must operate at the time the will is made and must dominate and control the making of the will; it must be such as to make the will express the purpose and intent of the person exercising the influence and not the purpose and intent of the testator. *Okken, supra; Bender v. Bender*, 72 N.W.2d 220, 223 (N.D.1955).

Although the existence or nonexistence of undue influence is a question of fact, a mere suspicion of undue influence is insufficient to require submission of the question of undue influence to the jury or to sustain a verdict. *Matter of Estate of Polda*, 349 N.W.2d 11 (N.D.1984). Evidence which merely shows that a party who benefited by the will had both motive and opportunity to exert influence over the testator is not sufficient to invalidate a will if there is no evidence that such influence was actually exerted. *Id.* A party challenging a will as invalid for undue influence must present evidence to support the assertion. *Boone v. Estate of Nelson*, 264 N.W.2d 881 (N.D.1978). We discern no such evidentiary basis in this case.

The evidence presented to the lower court, viewed in the light most favorable to Cates, does not raise an inference of undue influence in the execution of the 1987 will. Although Dorothy Herr, the natural mother of the three residuary beneficiaries under that will, was present when it was executed, she was not present during prior meetings when Clifton and Richard discussed the will. In the absence of any evidence that Dorothy, or anyone else, exerted any influence over Clifton at the time the will was executed, her mere presence and inquiry of Clifton about whether he included everyone in the will does not raise an inference of undue influence. Cates presented no other evidence about the circumstances surrounding the preparation and execution of the will. A competent testator may disinherit children and dispose of property without regard to the desires of prospective beneficiaries. *Stormon v. Weiss*, 65 N.W.2d 475 (N.D.1954). Cates' omission from the 1987 will does not create an inference of undue influence.

Viewed in the light most favorable to Cates, there was no evidence presented, by affidavit or otherwise, to raise an inference that, at the time the will was executed, someone other than Clifton "dominate[d] and control[led] the making of the will ... as to make [it] express the purpose and intent" of someone other than Clifton. *Okken*, 348 N.W.2d at 450. We conclude that the trial court properly granted summary judgment on the claim of undue influence.

We next examine Cates' claim that there are genuine issues of material fact as

---

**1.** Although Clifton's estate disputed the issue of paternity below, for purposes of the issues about the validity of Clifton's will, his estate acknowledges that Clifton is the natural father of Cates.

to whether Clifton lacked testamentary capacity to execute the 1987 will.

In *Stormon* we outlined the applicable standards for determining whether a testator lacks testamentary capacity:

> With respect to the issue of incompetency we start with the fundamental principle that sanity and testamentary capacity are presumed.
>
>    \*     \*     \*     \*     \*     \*
>
> The capacity to execute a will has so often been defined as being the ability of the testator to know the extent and character of his property, to be mindful of the natural objects of his bounty, and to appreciate the character of the act in which he is engaged, that this simple test may be applied as elementary and without the citation of authority.
>
>    \*     \*     \*     \*     \*     \*
>
> The standard of testamentary capacity which has finally been agreed upon, in substance, by the great weight of authority is as follows: Testator must have sufficient strength and clearness of mind and memory, to know, in general, without prompting, the nature and extent of the property of which he is about to dispose, and nature of the act which he is about to perform, and the names and identity of the persons who are to be the objects of his bounty, and his relation towards them. He must have sufficient mind and memory to understand all of these facts; and a charge, in negative form, that capacity is lacking if testator is not able to know all of these facts, is erroneous, since he lacks capacity if he is unable to understand any one of them. He must also be able to appreciate the relations of these factors to one another, and to recollect the decision which he has formed.
>
>    \*     \*     \*     \*     \*     \*
>
> If testator actually remembers and knows what his property is, who are the natural objects of his bounty, and who are the proposed beneficiaries, and his duties towards them, and if he actually understands the nature of the act which he is performing, capacity to make a will is established, at least in the absence of an insane delusion.

*Stormon,* 65 N.W.2d at 504–505.

Cates argues that Clifton's failure to remember that she was his child and his statement on an application for insurance that his stepchildren were "children of the marriage of Clifton & Dorothy Herr" raised a factual inference that he was not "mindful of the natural objects of his bounty." We disagree.

Clifton's application for insurance was almost six years before he executed the 1987 will and does not raise a genuine issue of material fact as to whether Clifton had testamentary capacity to execute a will almost six years later. *See Boone,* 264 N.W.2d 881. Clifton's attorney, Richard Herr, testified by deposition that Clifton was "fully aware of all the property he owned and who the objects of his bounty would be" at the time the 1987 will was executed, and that will specifically stated that Dorothy's children were his stepchildren. We do not believe that Clifton's disposition of his property to three stepchildren, rather than to his natural child with whom he had no contact, is so unnatural as to warrant an inference that he lacked testamentary capacity. As we have noted, a parent may disinherit children and dispose of property without regard to the desires of prospective beneficiaries. *Stormon,* 65 N.W.2d 475. We are not persuaded that the circumstances relied upon by Cates raised a genuine issue of material fact that Clifton was not "mindful of the natural objects of his bounty."

◼ Cates also claims that Clifton's belief that he was sterile evidenced a delusion which destroyed his testamentary capacity.

In *Matter of Estate of Flaherty,* 446 N.W.2d 760 (N.D.1989), we recently discussed how a delusion affects the execution of a will. We "distinguish[ed] between mistaken beliefs not produced by mental illness, simply because they are based on evidence which is incomplete or misleading, and those irrational false beliefs produced by a mental illness." *Id.* at 765. We quoted with approval from 1 Bowe–Parker: *Page on Wills* § 12.29, p. 631 (1960):

An insane delusion, therefore, is more than just a mere delusion, a false belief, an eccentricity, a clash between two persons of different temperament or personality, or a religious or racial prejudice of ancestral origin. It is a delusion that is the product of a sick or diseased mind and that is held to without evidence or rational basis.

*Flaherty,* 446 N.W.2d at 765. In this case, Cates did not offer any evidence, by affidavit or otherwise, to demonstrate that Clifton's belief that he was sterile was "the product of a sick or diseased mind and that it [was] held to without evidence or rational basis."

Cates' reliance on *In re McGovern's Will,* 241 Wis. 99, 3 N.W.2d 717 (1942), is misplaced. In that case there was expert testimony that the testator " 'was suffering from a mixed psychoneurosis,' and was subject to an obsession or an 'uncontrollable urge to follow a thought or do an unnecessary action.' " Experts agreed that McGovern was suffering from a continuing obsession. In this case there is only a bare assertion of a delusion which is insufficient to raise a genuine issue of material fact. *See Boone,* 264 N.W.2d 881. *McGovern* is therefore distinguishable.

Cates also claims that there were genuine issues of material fact about whether Clifton's 1987 will was executed under a mistaken belief. She relies upon her omission from the will, Clifton's statement to relatives that he was sterile, and his failure to remember Cates or the paternity judg-

ment. She argues that Clifton's failure to mention his natural child in his will created a rebuttable presumption that the omission was from accident, misapprehension, or forgetfulness and not from an intent to disinherit her.

Under our former pretermitted child law [NDCC 56–04–17],[2] we held that the omission of a child from a will raised a rebuttable presumption that the child was unintentionally omitted from the will and that extrinsic evidence was admissible to rebut that presumption. *E.g., In re Estate of Blank,* 219 N.W.2d 815 (N.D.1974). *See also* 79 Am.Jur.2d, *Wills* § 666 (1975). Similar statutes were adopted in many jurisdictions to change the common law rule that omission of a child from a will was presumed to be deliberate.[3] *Matter of Will of Padilla,* 91 N.M. 160, 571 P.2d 817 (1977). But our former statute has been replaced with a different one.

■ Our current pretermitted children statute, NDCC 30.1–06–02 [Uniform Probate Code 2–302], was adopted effective July 1, 1975. 1973 N.D.Sess. Laws Ch. 257, § 83. It says:

*Pretermitted children.—1.* If a testator fails to provide in his will for any of his children born or adopted after the execution of his will, the omitted child receives a share in the estate equal in value to that which he would have received if the testator had died intestate unless:

---

**2.** NDCC 56–04–17 said:

When any testator omits to provide in his will for any child of his, or for the issue of any deceased child, unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator as if he had died intestate, and succeeds thereto as provided in Section 56–04–16.

**3.** Two different approaches to the problem of an heir's omission from an ancestor's will are recognized by legal scholars. These are referred to as the "Massachusetts" and "Missouri" approaches. *Crump's Estate v. Freeman,* 614 P.2d 1096 (Okl.1980); *see* 79 Am.Jur.2d, *Wills* §§ 643–45 (1975); Annot., *Admissibility of extrinsic evidence to show testator's intention as to omission of provision for child,* 88 A.L.R.2d 616

(1963). Under the Missouri approach, if a testator omits a child from a will, the testator is deemed to have died intestate as to the child. 79 Am.Jur.2d, *Wills* § 644 (1975). Under the Massachusetts approach, if a testator omits a child from a will, the child receives an intestate share of the estate, unless the omission was intentional and not occasioned by mistake or accident. *Id.* Under the Massachusetts approach, extrinsic evidence is admissible to show both the presence or absence of an intent to disinherit, while under the Missouri approach any evidence offered to rebut the statutorily created presumption of inadvertent omission must appear within the four corners of the will. *Id.* Our former statute followed the Massachusetts approach and permitted extrinsic evidence to show the testator's intent. *In re Estate of Blank,* 219 N.W.2d 815 (N.D.1974).

a. It appears from the will that the omission was intentional;

b. When the will was executed the testator had one or more children and devised substantially all his estate to the other parent of the omitted child; or

c. The testator provided for the child by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or other evidence.

2. If at the time of execution of the will the testator fails to provide in his will for a living child solely because he believes the child to be dead, the child receives a share in the estate equal in value to that which he would have received if the testator had died intestate.

3. In satisfying a share provided by this section, the devises made by the will abate as provided in section 30.1–20–02.

This statute is based on a presumption that a testator's failure to provide for a child living at the time the will was executed was intentional. *See Estate of Jones v. Jones*, 759 P.2d 345, 349 n. 4 (Utah Ct.App. 1988); Wellman & Gordon, *Uniformity in State Inheritance Laws: How UPC Article II Has Fared in Nine Enactments*, B.Y.U.L.Rev. 357, 373–74 (1976); Comment, *Articles II and III of the Uniform Probate Code as Enacted in Utah*, B.Y.U. L.Rev. 425, 434 (1976). The current statute has reversed the presumption of unintentional omission on which the former statute was based.

■ Subsection (1) of NDCC 30.1–06–02 applies to children born or adopted after the execution of the will and does not apply to this case because Cates was born before Clifton's will was executed. *Compare Matter of Estate of Hilton*, 98 N.M. 420, 649 P.2d 488 (N.M.Ct.App.1982) [New Mexico version of UPC 2–302 applies to children "born or adopted before or after the

execution of his will."] Subsection 2 applies to omissions from a will *solely* because the testator believed the child to be dead and is not applicable to this case. The mere omission of Cates from the 1987 will is insufficient to raise an inference that Cates was omitted from Clifton's will *solely* because he believed she was dead. *See In re Araneo Will*, 211 N.J.Super. 456, 511 A.2d 1269 (1985). Thus, our current pretermitted children statute does not apply to this case.

Although NDCC 30.1–15–07 generally recognizes mistake, along with several other grounds, as a basis for contesting the validity of a will, NDCC 30.1–06–02 specifically controls whether the omission of a child from a will was because of mistake or was intentional. Under our rules of statutory construction, the specific controls the general. NDCC 1–02–07. Cates' claim that she was omitted from Clifton's will because of mistake is therefore governed by NDCC 30.1–06–02. Because we have concluded that she does not come within the requirements of that provision, her claim that she was omitted from the will because of Clifton's mistaken belief is without merit. Instead, a presumption exists that her omission was intentional, and the trial court properly granted summary judgment on that issue.

Because we have concluded that the trial court properly granted summary judgment on Cates' objection to the probate of Clifton's will, we do not address her claim that she was entitled to a jury trial on the will contest.

Since she was Clifton's sole child and since no spouse survived, Cates also contends that she was entitled to the exempt property under NDCC 30.1–07–01. Cates' objection to the probate of Clifton's will requested her exempt property; however, the county court dismissed her claims without separately addressing her request for exempt property.[4]

---

**4.** For purposes of this appeal, we assume that the court denied her request. If the court did not deny her request, this appeal would not be properly before us without a NDRCivP 54(b)

certification because Cates would still have claims pending. *See Matter of Estate of Starcher*, 447 N.W.2d 293 (N.D.1989).

Although Clifton's estate contests paternity for purposes of this issue, NDCC 14–17–14(1) says that a "judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for *all* purposes." [Emphasis added.] A final judgment on the merits of an issue is conclusive as to the parties and their privies in all other actions. *Matter of Estate of Starcher*, 447 N.W.2d 293 (N.D.1989). The final 1942 judgment in which Clifton admitted that he was Cates' father is determinative of the existence of the father-child relationship between Clifton and Cates and is the same issue presented here. Clifton's estate is the successor to Clifton's interest and cannot seriously argue that it is not bound by that judgment against Clifton. *See In re Koernke Estate*, 169 Mich.App. 397, 425 N.W.2d 795 (1988); *Estate of Davis v. Davis*, 574 S.W.2d 477 (Mo.Ct.App. 1978). *Compare Flaherty v. Feldner*, 419 N.W.2d 908, 910 (N.D.1988). The judgment of paternity against Clifton is binding on Clifton's estate.

NDCC 30.1–07–01 says:

In addition to the homestead defined in section 47–18–01, the surviving spouse of a decedent who was domiciled in this state is entitled to receive from the estate, to a value not exceeding five thousand dollars in excess of any security interests therein, household furniture, automobiles, furnishings, appliances, and personal effects. If there is no surviving spouse, children of the decedent are entitled jointly to the same value.... These rights are in addition to any benefit or share passing to the surviving spouse or children by the will of the decedent unless otherwise provided, by intestate succession, or by way of elective share.

In *Matter of Estate of Dunlap*, 199 Mont. 488, 649 P.2d 1303 (1982), the court construed a similar statute and held that a child who was specifically disinherited by a will was entitled to the exempt property allowance under that statute. The court said that "the decedent's will did no more than disinherit the child and expressed no intent as to statutory rights."

*Dunlap, supra,* 649 P.2d at 1306. We agree with that rationale and further note that NDCC 30.1–12–01 recognizes that "[u]pon the death of a person, his real and personal property devolves to the persons to whom it is devised by his last will ... subject to ... exempt property."

In this case Clifton's spouse, Dorothy, predeceased Clifton thereby entitling Clifton's sole child, Cates, to the exempt property allowance. We therefore conclude that the trial court erred in denying Cates' request for exempt property and we remand for determination of that issue.

The county court judgment is affirmed as to the will contest and reversed as to the exempt property. We remand for further proceedings. Costs on appeal are awarded to Cates.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.