1997 ND 213

**Kenneth PERRY, Judith Goetz, Nancy Brannan and Kathee Heisz, Petitioners and Appellees,**

v.

**Patricia J. REINKE, Personal Representative of the Estate of Gertrude Mahoney a/k/a Kathryn Gertrude Mahoney, deceased Respondent and Appellant.**

**Civil No. 970095.**

Supreme Court of North Dakota.

Nov. 6, 1997.

Rehearing Denied Dec. 2, 1997.

Orlin W. Backes, McGee, Hankla, Backes & Dobrovolny, Minot, for petitioners and appellees.

John C. Skowronek, Lamont and Skowronek, Minot, for respondent and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Patricia J. Reinke, personal representative for the estate of Gertrude Mahoney, appealed from the Judgment of the Ward County District Court entered upon a jury verdict finding the Last Will and Testament of Gertrude Mahoney invalid as the product of undue influence. We affirm.

I

[¶ 2] Gertrude Mahoney was a single, 86–year–old, childless woman with no surviving brothers or sisters. She had ten living first generation nieces and nephews and twenty-two living grand nieces and nephews. Personal Representative Patricia Reinke is Gertrude's niece and Bob Mahoney is her nephew. The will was challenged by Gertrude Mahoney's grand nieces and nephew: Judith Goetz, Nancy Brannan, Kathee Heisz, and Kenneth Perry (Perry children). The challengers are the children of Gertrude's now-deceased niece, Delores, and Delores's husband, Wilton Perry.

[¶ 3] During her life, Gertrude Mahoney lived with her parents until their death and thereafter with her brother James Edwin Mahoney. Gertrude was described as a very quiet, dependent person who spoke in short sentences, kept in the background of conversations, avoided being in public, and lived a hermit-like life. Prior to her death, Gertrude was considered to be almost completely deaf and this condition required others to communicate with her by writing in notebooks.

[¶ 4] Just before his death, their father asked Edwin to remain single so he could take care of his sister Gertrude. Edwin lived with Gertrude from their father's death in 1949 until he became ill and died in November of 1993. Edwin was hospitalized until his death. Edwin died without a will and Ger-

trude was appointed personal representative of his estate. The administration required Gertrude to contact 32 heirs at law, each of whom received a portion of Edwin's interest in the family farm. In order to keep the farm intact, Gertrude bought back Edwin's interest from each of these heirs.

[¶ 5] The evidence at trial showed the Perry family was always close to Edwin and Gertrude. When Edwin became ill, Wilton Perry asked Reinke and Bob Mahoney to watch over Gertrude. Gertrude was naive when it came to financial matters and received assistance in handling her affairs from Reinke and Bob Mahoney. While handling Gertrude's assets, Reinke transferred over one hundred thousand dollars into accounts and certificates of deposit payable to Patricia Reinke and Bob Mahoney on Gertrude's death.

[¶ 6] Reinke attempted to exclude the Perry children from Gertrude's affairs. In one of the handwritten notes Reinke instructed Gertrude "to tell Nancy Perry to mind her own business." In another note Reinke wrote, "[d]on't say anything to her —— it just gives her more ammunition —— she thinks Bob and I are stealin['] from you and from her." Reinke also mentioned how much money the Perry children were costing Gertrude by calling her attorney regarding the estate. On at least one occasion, Gertrude expressed concern to one of the Perry children over the disposition of her assets.

[¶ 7] Reinke was also intimately involved in the creation of Gertrude's will. She advised Gertrude the best way to avoid the problems associated with Edwin's estate would be to draw up a will. Reinke contacted the attorney who was probating Edwin's estate and informed him Gertrude wished to make a will. Because Gertrude was hard of hearing, Reinke contacted the law office and communicated the terms of the will to the office. After communicating the terms of the will, Reinke told a law office assistant she would get back to her "if this is what Gert wants." Upon its completion, the will was sent to Reinke, without a copy being forwarded to Gertrude. Reinke brought Gertrude to the law office to sign the will and was in the room while the will was read over and signed.

[¶ 8] Under the will, identified nieces and nephews, including Reinke and Bob Mahoney, were entitled to a one-tenth share of the entire estate. The will contained a lapse provision which when combined with the limited number of identified heirs, cut off all grand nieces and nephews, including the Perry children. Had Gertrude died intestate, the Perry children would have been heirs at law. *See* N.D.C.C. § 30.1–04–03 (1996) (U.P.C. § 2–103) and N.D.C.C. § 30.1–09.1–09(3) (1996) (U.P.C. § 2–709). Also under the intestate succession law, Reinke would receive more than she received under the will. *Id.* Nevertheless, Reinke and Bob Mahoney were both alleged to have unduly influenced Gertrude Mahoney in the making of her will.

[¶ 9] The jury heard the above facts as well as testimony from Dr. Stephan Podrygula, a clinical psychologist. Dr. Podrygula reviewed the notebooks containing communications between Reinke and Gertrude, various court documents and depositions, including Gertrude's will. Dr. Podrygula identified fifteen "facts" supporting his conclusion Gertrude was subject to undue influence. Dr. Podrygula testified as to how these "facts" satisfied the legal elements of undue influence.

[¶ 10] The jury found Bob Mahoney did not exercise undue influence over Gertrude Mahoney in the creation of her will. However, the jury found the will to be invalid as the product of undue influence exerted by Patricia Reinke.

II

[¶ 11] Personal Representative Patricia Reinke contends the district court erred in three ways: (a) in denying judgment as a matter of law because the verdict was against the weight of the evidence; (b) in denying her motion for a new trial because the evidence was insufficient to justify the verdict; and (c) in denying her motion for a new trial because newly discovered evidence would result in a different verdict. The Perry children resist Reinke's contentions by countering each of the these arguments with

evidence favorable to the jury verdict. We consider Reinke's arguments in turn.

## A. Judgment as a Matter of Law

[¶ 12] Reinke argues the district court erred in denying her Rule 50 motion for judgment as a matter of law because the jury verdict is against the *weight* of the evidence. *See N.D. R. Civ. P. 50.*[1] In a jury trial, the existence of undue influence is a question of fact for the jury to decide. *Okken v. Okken,* 325 N.W.2d 264, 267 (N.D.1982) (reversing the granting of a judgment notwithstanding the verdict and affirming the granting of a motion for a new trial). On a motion for judgment as a matter of law, the district court has no discretion for viewing the evidence. *Id.* at 269 (holding the trial court has no discretion in viewing the evidence on a motion for judgment n.o.v.). "[The court] must admit the truth of all evidence in favor of the verdict and the truth of all reasonable inferences from that evidence. *[The court] cannot weigh the evidence, and [ ] cannot judge the credibility of witnesses.*" *Id.* (Emphasis added). (Citation omitted). On appeal, "we must examine the trial record and then apply the same standard [ ] the trial court was required to apply initially." *Id.* at 267.

[¶ 13] In reviewing a district court ruling on a motion for judgment as a matter of law, we examine the sufficiency of the evidence by viewing the evidence supporting the jury verdict as the truth. *Id.* We then apply the standard for a Rule 50 judgment as a matter of law which is whether the evidence favoring the verdict is so insufficient reasonable minds could reach only one conclusion as to the verdict. *Id.* The evidence must be sufficient with regard to each essential element of the claim. *Cf. Pulkrabek v. Sletten,* 557 N.W.2d 225, 226 (N.D.1996) (stating summary judgment is required against a party who fails to establish a factual dispute as to an essential element of his claim). *See Dobbins v. Hupp,* 562 S.W.2d 736, 743 (Mo.Ct.App.1978) (holding the issue of undue influence is submissible to a jury once the elements exist). But the evidence must also create more than just a mere suspicion of undue activity. *Matter of Estate of Polda,* 349 N.W.2d 11, 14–15 (N.D.1984) (holding the district court's finding of no undue influence was not clearly erroneous because the evidence "at best raises a mere suspicion of undue influence").

[¶ 14] The elements of undue influence are: "(1) [ ] the testator was subject to such influence; (2)[ ] the opportunity to exercise [undue influence] existed; (3)[ ] there was a disposition to exercise [undue influence]; and (4)[ ] the result appears to be the effect of such influence." *Matter of Estate of Herr,* 460 N.W.2d 699, 702 (N.D.1990) (Quotation and citations omitted). While not conceding any of the four elements, Reinke essentially focuses on three main arguments.[2]

[¶ 15] First, Reinke argues the Perry children introduced no evidence of what Gertrude's intent was and how it differed from what was contained in her will. Reinke contends this Court's definition of undue influence and the fourth element of the test require the challenger to offer direct evidence of how the testator's intent differed from the will. Reinke quotes as support, the defini-

---

1. In 1994, Rule 50 was revised to follow the newer federal rules terminology. *See N.D. R. Civ. P. 50,* Explanatory Note. "The revision abandons the terminology directed verdict and judgment notwithstanding the verdict" in favor of "judgment as a matter of law." *Id.* (Internal quotations omitted). Despite this "dressed-up" language, a motion for judgment as a matter of law (formerly known as directed verdict) and a renewed motion for judgment as a matter of law (formerly known as judgment notwithstanding the verdict or judgment n.o.v.) have the same standard as before. *Id.*

2. Reinke also argues the distribution of Gertrude's estate is reasonable because it cuts off at the first generation of heirs and favors no one. Courts should be wary of arguments branding testamentary schemes as "reasonable" or "fair." If testators are to be secure their estates will be distributed as they legally intend, a judge or jury must not supplant their own concepts of how property should be distributed in place of the testator's express intentions. *Matter of Estate of Flaherty,* 446 N.W.2d 760, 769 (N.D.1989) (VandeWalle, J., dissenting). *See also Matter of Estate of Herr,* 460 N.W.2d 699, 702 (N.D.1990) (stating "[a] competent testator may disinherit children and dispose of property without regard to the desires of prospective beneficiaries").

tion of "undue" in *Matter of Estate of Herr,* 460 N.W.2d at 702. In *Herr,* we stated "[t]o be undue, the influence must operate at the time the will is made and must dominate and control the making of the will; it must be such as to make the will express the purpose and intent of the person exercising the influence *and not the purpose and intent of the testator."* *Id.* (Emphasis added). (Citations and quotations omitted). Reinke also points to the fourth element of undue influence as requiring direct evidence of Gertrude's contrary intent. Undue influence cases are frequently built upon circumstantial evidence. *See Dobbins,* 562 S.W.2d at 741. Direct evidence of a testator's contrary intent is often not available. The most reliable witness as to the testator's intent, the testator herself, is dead when the contest commences, and the influencing party may have hindered the testator's contact with others in order to exercise greater control.

[¶ 16] In the instant case, Gertrude's close relationship with the Perry children would allow reasonable minds to infer she would want to leave something for them in her will. This inference is more than just a suspicion because the evidence reveals a close relationship between Gertrude and the Perry family. In addition, it is reasonable for the jury to infer Reinke communicated the terms of the will to the attorney's office before consulting with Gertrude. Reinke called the attorney's office, communicated the terms of the will, and in concluding the call said she would get back to the office "if this is what Gert wants." While merely encouraging another to make a will is not undue influence, such overreaching conduct by Reinke may lead reasonable minds to conclude it was her intent and not the intent of Gertrude embodied in the terms of the will. *Cf. Matter of Estate of Wagner,* 265 N.W.2d 459, 464 (N.D.1978) (holding preparation of a will by a son-in-law who was a lawyer does not create a presumption of undue influence even when the lawyer's wife is a substantial beneficiary under the will). We conclude the district court did not err in finding sufficient evidence for submission of the case to the jury.

[¶ 17] Next, Reinke submits there is insufficient evidence to show Reinke had a disposition to exercise undue influence. The jury heard evidence at trial regarding the bellicose relationship between Reinke and the Perry children. The evidence revealed how Reinke tried to exclude the Perry children from Gertrude's life and affairs by treating them as meddlers who were just costing Gertrude money. Reinke's dislike for the Perry children could lead reasonable minds to conclude Reinke had a disposition to unduly influence Gertrude against the Perrys.

[¶ 18] Finally, Reinke argues the evidence was insufficient to show her influence was undue. For support, Reinke points to the fact she actually takes less under the will than she would under the intestate succession law. To be undue, the influence exerted must overmaster the mind and control the testamentary actions of the testator. *Matter of Estate of Stenerson,* 348 N.W.2d 141, 143 (N.D.1984). A direct financial benefit to the influencing party is not required to prove undue activity. *In re Perssion's Estate,* 20 Wis.2d 537, 123 N.W.2d 465, 468 (1963) (stating "[t]he concept of undue influence is not limited to obtaining a direct benefit for one's self."). *Cf. Polda,* 349 N.W.2d at 14 (holding "[e]vidence which merely shows [ ] a party who benefited by the will had both motive and opportunity to exert influence over the testator is not sufficient to invalidate a will where there is no evidence [ ] such influence was actually exerted").

[¶ 19] Although a financial benefit may be strong evidence supporting a finding of undue influence, its absence does not prevent reasonable minds from concluding a will was the product of undue influence. *Perssion's Estate,* 123 N.W.2d at 468. The gravamen of the concept of undue influence is how the actions of the influencing party affect the *intent* of the testator, not the effect the influence has on the disposition of the estate. *Polda,* 349 N.W.2d at 14. An influencing party may have no financial interest in the assets of the testator at all, but the influence is nonetheless undue when it causes a disposition contrary to what the testator would, in her own mind, intend. Here, there was evidence Reinke disliked the Perry children and tried to transfer her dislike to Gertrude. Reasonable minds could conclude

Reinke wanted the Perry children disinherited, even to her own financial detriment. There was also evidence, Reinke wanted to purchase the interests in the farm from the other testamentary heirs, something much more difficult with the greater number of grand nieces and nephews, particularly when the relationship with some of them was strained. Reasonable minds could find the influence Reinke exerted on Gertrude resulted in a disposition contrary to what Gertrude, in her own mind, would have intended.

[¶ 20] The district court did not err in denying Reinke's motion for judgment as a matter of law based on insufficient evidence.

### B. *New Trial, Insufficient Evidence*

[¶ 21] Reinke next argues the district court abused its discretion in denying her motion for a new trial because the evidence was insufficient to justify the verdict. *See N.D. R. Civ. P. 59(b)(6).* Unlike a motion for judgment as a matter of law, in a motion for a new trial the district court may, "within limits, weigh the evidence and judge the credibility of witnesses." *Okken,* 325 N.W.2d at 269.

> "[W]hen a motion for a new trial is made and the reason given in support of the motion is [ ] there was insufficient evidence to justify the verdict, the moving party is asking the trial court to decide whether or not the verdict is against the weight of the evidence."

*Id.* Unlike our review for judgment as a matter of law, on review of a motion for new trial, we do not apply the same standard as the district court and will not re-weigh the evidence on appeal. *Cf. Id.* We merely look to see whether the district court abused its discretion. *Id.* An abuse of discretion occurs when the district court is unreasonable, arbitrary, or unconscionable in rendering its decision. *Id.*

[¶ 22] A verdict is against the weight of the evidence when it is not supported by substantial evidence. *Olmstead v. First Interstate Bank,* 449 N.W.2d 804, 807 (N.D. 1989). Here, the district court concluded the verdict was supported by substantial evidence. We agree with this assessment.

[¶ 23] In the trial, the Perry children offered the testimony of Dr. Stephan Podrygula, a clinical psychologist. Dr. Podrygula identified fifteen "facts" and applied those facts to each of the four elements of undue influence. Reinke attacks the testimony of Dr. Podrygula as not credible, conclusory, and uninformed. Reinke also criticizes the Perry children's case as coming mainly from Brannan and Perry, two interested parties. From the record, it is evident Reinke educated both judge and jury of Dr. Podrygula's possible failings. Reinke also had the opportunity to criticize the Perry's case. Reinke's concerns were aired and rejected. The rejection does not rise to the level of abuse of discretion by the district court.

[¶ 24] The unusual factual circumstances in this case, where the communications from Reinke and Gertrude were recorded in notebooks, allowed the jurors and district court to look inside the relationship between Gertrude and Reinke. The notebooks provided more reliable evidence upon which the jurors and court could base their decisions. Even if we were to turn a blind eye to the testimony of Dr. Podrygula and the Perry children, some of the notebook discussions reveal an attempt to transfer Reinke's animosity toward the Perrys to Gertrude. To conclude Reinke's words overmastered the mind of a naive, vulnerable, aging person is not unreasonable.

[¶ 25] The district court did not abuse its discretion when it denied Reinke's motion for new trial based on the weight of the evidence.

### C. *New Trial, Newly Discovered Evidence*

[¶ 26] Finally, Reinke argues the district court abused its discretion in denying Reinke's motion for new trial based on newly discovered evidence. *See N.D. R. Civ. P. 59(b)(4).* During the trial, Reinke and Bob Mahoney were alleged to be the beneficiaries of over one hundred thousand dollars in nonprobate transfers. Reinke argues during the trial, she forgot she had transferred the nonprobate assets into the estate. However, Reinke now remembers and has bank records proving she made the transfer into the

estate account prior to the time of trial. The district court concluded,

"I do not consider Reinke and [Bob] Mahoney not knowing what they had done, or not remembering what they had done, or not going to a local bank to find out what they had done when the question arose during the trial having now been remedied to be newly discovered evidence."

[¶ 27] Before a new trial is granted, the following requirements must be met: "(1) the evidence must have been discovered following trial; (2) the movant must have exercised due diligence in discovering the evidence; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material and admissible; and (5) the evidence must be such that a new trial would probably produce a different result." *Keyes v. Amundson*, 391 N.W.2d 602, 605 (N.D. 1986) (internal citations omitted). While we reach no conclusion regarding the legal effect of the transfer into the estate, we agree with the district court, the bank records are not "newly discovered" evidence.

[¶ 28] Although the money reported in the bank records was at issue during the trial, their production after trial is not newly discovered evidence when they were easily discoverable by Reinke before the trial commenced. As this Court said in *Baird v. Kensal Light & Power Co.*, 63 N.D. 88, 246 N.W. 279, 283 (1932), "[i]t is not enough to present a showing [ ] he did not know, . . . the materiality of the evidence. It is the evidence itself, and not merely its materiality which must appear to have been newly discovered." *Id.* (Citation and quotation omitted). *See also* 66 C.J.S. *New Trial* § 101 (1950) (stating "[i]n order to warrant a new trial it must appear [ ][the] evidence is in fact newly discovered, and not merely the importance of it . . . ."). Moreover, the bank records, while possibly material, are not strong enough evidence to produce a different result in a new trial. *Keyes*, 391 N.W.2d at 605 (noting a new trial should be granted if the unsuccessful party discovers new evidence after the trial, which he could not have diligently discovered and produced at trial, and the evidence is relevant, material, and

strong enough to probably produce a different result in a new trial).

[¶ 29] In preparing for trial, a party must marshal all of the available evidence through discovery proceedings. Failure to do so will not be forgiven in a motion for new trial. *Cf. Erdahl v. Hegg*, 110 N.W.2d 355 (N.D.1961) (reversing a district courts granting of a new trial based on newly discovered evidence where the movant knew the identity of an available witness having knowledge of relevant facts which the witness refused to disclose until after trial and where the facts were available through discovery).

[¶ 30] We conclude the district court did not abuse its discretion in denying Reinke's motion for new trial based on newly discovered evidence.

### III

[¶ 31] Accordingly, we affirm.

[¶ 32] SANDSTROM, NEUMANN, MARING and MESCHKE, JJ., concur.

