2001 ND 87

**Shirley MEYER as Personal Representative of the Estate of John Redmond Murphy, a/k/a "Jack" Murphy, and Leone Linseth and Rose Hansen as Guardians for Dorothy M. Murphy, Plaintiffs and Appellants,**

v.

**Michael J. MAUS, Bruce R. Howe, and Howe, Hardy, Galloway & Maus, P.C., Defendants,**

**Michael J. MAUS and Howe, Hardy, Galloway & Maus, P.C., Appellees.**

**No. 20000180.**

Supreme Court of North Dakota.

May 3, 2001.

282

 

James L. Norris, P.C., Houston, TX, for plaintiffs and appellants.

James S. Hill (argued) and Rebecca S. Thiem (appeared), Zuger Kirmis & Smith, Bismarck, N.D., for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] The Estate of Jack Murphy and the guardians for Dorothy Murphy ("plaintiffs") appealed from an order vacating a $220,000 jury verdict for the plaintiffs and granting judgment as a matter of law to Michael Maus and Howe, Hardy, Galloway & Maus, P.C. ("defendants"). We conclude the trial court did not err in granting judgment as a matter of law because the defendants' conduct at a November 13, 1992, meeting did not proximately cause damage to the plaintiffs. We affirm.

I

[¶ 2] The plaintiffs sued the defendants and another attorney in the law firm, Bruce Howe, for fraud and deceit, legal malpractice, conflict of interest, and breach of a fiduciary duty for actions regarding the Murphy Brothers ranching partnership. The plaintiffs' complaint alleged a longstanding oral partnership between Jack, Hugh, Red, and Tom Murphy under which Jack Murphy's brother, Hugh Murphy, owned 74 percent of the partnership; Jack Murphy owned 22 percent of the partnership; and Jack Murphy's sons, Red and Tom Murphy, owned 3 and 1 percent, respectively, of the partnership. Under the oral partnership arrangement, Hugh Murphy paid all the expenses of Murphy Brothers from his 74 percent of the partnership.

[¶ 3] Jack Murphy entered a nursing home in October 1989, and Hugh Murphy died intestate in February 1990. After Hugh Murphy died, attorney Donna Murphy, Jack Murphy's daughter, probated Hugh Murphy's estate, and his real property passed to Tom and Red Murphy by virtue of a 1980 annuity agreement. No evidence was presented regarding dissolution of Murphy Brothers partnership, but Donna Murphy advised her brothers, Red and Tom Murphy, to hire separate counsel to prepare a written partnership agreement for the ranching operation.

[¶ 4] In early 1991, Red Murphy contacted Maus to prepare a partnership agreement for the ranching operation. Maus prepared a draft partnership agreement naming Red and Tom Murphy as the sole partners in the partnership and stating 22 percent of the gross proceeds from the sale of livestock were payable to Jack Murphy's wife, Dorothy Murphy, as rent from land owned by Jack and Dorothy Murphy. On February 15, 1991, Red and Tom Murphy executed a final written partnership agreement that deleted the language stating the payments to Dorothy Murphy were for land rent. The final written agreement said neither partner would receive any salary from the partnership and the gross proceeds from the sale of livestock of the partnership would go 74 percent to the partnership account, 22 percent to Dorothy Murphy, 3 percent to Red Murphy, and 1 percent to Tom Murphy. In the fall of 1991, Dorothy Murphy received 22 percent of proceeds from the sale of partnership calves.

[¶ 5] In October 1992, Dorothy Murphy applied for medicaid benefits on behalf of Jack Murphy. According to Maus, on November 3, 1992, he received a telephone call from Red Murphy, advising Maus that

Dorothy Murphy had applied for medicaid benefits and, under a power of attorney from Jack Murphy, would be conveying 400 acres to Red and Tom Murphy. Red Murphy asked Maus to prepare the deed for the transfer, and Maus met with Red, Tom, and Dorothy Murphy on November 13, 1992. On that date, Jack Murphy, through a power of attorney given to Dorothy Murphy, conveyed the 400 acres of land to Red and Tom Murphy for $51,035. According to the plaintiffs, at that meeting Maus provided Dorothy Murphy with incorrect legal advice about the necessity of selling the 400 acres. The plaintiffs claimed, if the 400 acres had not been sold, Dorothy Murphy would have been entitled to her 22 percent payment from the partnership, about $40,000 per year, as rent for the land for the rest of her life.

[¶ 6] After 1991, the partnership did not pay Dorothy Murphy 22 percent of the gross proceeds from the sale of livestock. The plaintiffs claimed family members met with Howe in March and April 1994 regarding the partnership payments and Jack Murphy's medicaid status. A serious disagreement ultimately developed between Red and Tom Murphy regarding management of the partnership, and they agreed to dissolve the partnership. By complaint dated March 25, 1994, Red Murphy sued Tom Murphy to dissolve the partnership. Red Murphy committed suicide on May 6, 1994, and Dorothy Murphy filed a claim against his estate for one-half of her 22 percent payment from the partnership. Under a stipulation with Red Murphy's estate, Dorothy Murphy received $36,572.14 for one-half the amount owed her by the partnership for the 1992, 1993, and 1994 calf crop.

[¶ 7] The plaintiffs sued the defendants and Howe for fraud and deceit, legal malpractice, conflict of interest, and breach of a fiduciary duty. The plaintiffs alleged the defendants deprived them of their 22 percent interest in the partnership, and provided them with faulty advice about the necessity of selling their 400 acres of land. The plaintiffs claim Maus did not advise them that if they sold the land, they would no longer receive the 22 percent partnership payments. After the lawsuit was begun, Jack Murphy died and his estate was substituted as a party for him. Guardians for Dorothy Murphy were also substituted as parties for her.

[¶ 8] At the close of the plaintiffs' evidence, the trial court directed a verdict for Howe, concluding no claims existed against him for fraud or deceit and no damages flowed from his alleged negligence. The court decided the plaintiffs had no claim regarding the drafting of the February 1991 partnership agreement, because Maus and the law firm did not then have an attorney-client relationship with Jack and Dorothy Murphy. The court also decided there was no evidence to support a claim for fraud or deceit in drafting the 1991 partnership agreement, or in the 1992 conveyance of the 400 acres. After those rulings by the court, the only claim remaining for trial was whether the actions of Maus and the law firm at the November 13, 1992, meeting constituted legal malpractice, breach of a fiduciary duty, or conflict of interest.

[¶ 9] During closing argument, the plaintiffs argued the 22 percent payments from the partnership to Dorothy Murphy represented rent payments for the 400 acres, and Maus advised them to sell the 400 acres without telling them the sale would end the partnership payments to Dorothy Murphy. A jury found the defendants were negligent and breached a fiduciary duty to the plaintiffs, and the defendants' actions proximately caused the plaintiffs $220,000 in damages.

[¶ 10] The trial court granted the defendants' motion for judgment as a matter of law, concluding:

    i. There is insufficient evidence in the record to support the argument made by the plaintiffs that the Murphy Brothers Ranch Partnership Agreement provided a life entitlement to Jack or Dorothy of a 22% interest payment of any amount, let alone $40,000.00 per year during their life. To the contrary, the partnership agreement specifically provided that the partnership could dissolve upon election of either partner, Tom or Red Murphy. The evidence is that the [sic] both decided to terminate this agreement. It is wholly speculative that this partnership would have continued but for the conduct of the defendants.

    . . . .

    k. There was no evidence to even suggest that had Dorothy been referred to another attorney for the legal work of November 13, 1992, that the other attorney would have concluded from any further inquiry or investigation that Jack's sale of land would have jeopardized or terminated any obligation to pay Dorothy under the Murphy Brothers Ranch Partnership Agreement. To the contrary, the decision to no longer pay Dorothy was a unilateral decision under the evidence made by Red Murphy and objected to by Tom Murphy. The payment clause itself was gratuitous. The payments were indexed to cattle sales and the life of the payments were at best controlled by the life of the partnership (a gratuitous clause inserted by the sons).

The plaintiffs appealed from the order granting the defendants judgment as a matter of law.

[¶ 11] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The plaintiffs' appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, N.D.C.C. § 28–27–01, and *Olson v. Job Serv.*, 379 N.W.2d 285, 287 (N.D.1985) (treating appeal from order as appeal from subsequently entered consistent judgment).

## II

[¶ 12] Our standard of review of a trial court's decision on a motion for judgment as a matter of law under N.D.R.Civ.P. 50 is the same as the standard applied to motions for directed verdict before the rule was modified in 1994. *Perry v. Reinke*, 1997 ND 213, ¶ 12 n. 1, 570 N.W.2d 224. In deciding whether the evidence is sufficient to create an issue of fact, a trial court must use a rigorous standard with a view toward preserving a verdict. *Okken v. Okken*, 325 N.W.2d 264, 267 (N.D.1982). The standard is whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion. *Id.* In determining whether the evidence is sufficient to create an issue of fact, the trial court may not consider the weight of the evidence or judge the credibility of witnesses; rather, the court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence. *Wastvedt v. Vaaler*, 430 N.W.2d 561, 564 (N.D.1988); *Okken*, at 267. The evidence must be sufficient to create a factual issue with regard to each essential element of a claim. *Perry*, at ¶ 13; *Wastvedt*, at 565. A trial court's decision on a motion for

judgment as a matter of law is fully reviewable on appeal. *Knoff v. American Crystal Sugar Co.*, 380 N.W.2d 313, 318 (N.D.1986).

### III

■ [¶ 13] The plaintiffs do not argue the trial court erred in dismissing their claims against Howe, their claims against the defendants for fraud and deceit, and their claims against the defendants arising out of the preparation of the February 15, 1991, partnership agreement.[1] Instead, the plaintiffs argue the trial court erred in granting the defendants' motion for judgment as a matter of law, because the court improperly weighed the evidence and judged the credibility of the witnesses regarding the actions by Maus and the law firm at the November 13, 1992, meeting. The plaintiffs argue there was "overwhelming" evidence the 22 percent partnership payment to Dorothy Murphy was for land rent, 22 percent of the cattle sales were used as the basis to calculate the amount of land rent, and Maus "should have disclosed to [her] on November 13, 1992 that the 22% payment was for land rent and that by ... transferring the 400 acres she would be terminating the 22% payment to her." The plaintiffs essentially argue Dorothy Murphy was entitled to the 22 percent payment from the partnership for the rest of her life.

[¶ 14] The trial court instructed the jury about the plaintiffs' burden of proving the elements of legal malpractice, breach of a fiduciary duty, and conflict of interest in language which required the plaintiffs to establish they suffered damages that were proximately caused by the defendants' breach of duty or conflict of interest. *See*

*Wastvedt*, 430 N.W.2d at 564–68. The trial court instructed the jury:

*BURDEN OF PROOF—LEGAL MALPRACTICE BREACH OF FIDUCIARY DUTY.* In a legal malpractice and breach of fiduciary duty action, the plaintiffs have the burden of proving by a greater weight of the evidence, that the defendant breached a professional standard of care or duty or a fiduciary duty owed to the plaintiffs and that the breach was the proximate cause of plaintiff's damages.

*BREACH OF FIDUCIARY DUTY— ELEMENTS.* To establish a claim for breach of fiduciary relationship, the plaintiff must prove by a greater weight of the evidence:

1.  A fiduciary relationship between the plaintiff and defendant.

2.  A duty by the defendant to the plaintiffs arising from that relationship.

3.  The defendants [sic] breach of that duty.

4.  Damage to the plaintiffs proximately caused by that breach of duty.

*BREACH OF FIDUCIARY DUTY.* One standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relationship.

The relationship between an attorney and his client is highly fiduciary in its nature.

*CREATING THE ATTORNEY-CLIENT RELATIONSHIP.* The existence of the relationship cannot be defined by precise rules, but depends on the circumstances creating the relation-

---

1.  Issues not briefed or argued on appeal are abandoned, *see Buchholz v. City of Oriska*, 2000 ND 115, ¶ 5, 611 N.W.2d 886, and become the law of the case. *See Moch v. Moch*, 1998 ND 95, ¶ 8, 578 N.W.2d 129; *Tom Beuchler Const. v. City of Williston*, 413 N.W.2d 336, 339 (N.D.1987).

ship. Because the relationship is consensual, the predicate is that both lawyer and client have consented, expressly or impliedly, to its formation. No particular contract or formality is necessary to create the relationship. The relationship of attorney and client can be express or implied from the circumstances constituting a request for and agreement to render legal assistance or advice by the attorney.

*ELEMENTS OF LEGAL NEGLIGENCE.* To establish a claim for negligence, the plaintiff must prove by the greater weight of evidence:    ·

1.  a lawyer-client relationship;
2.  a duty by the lawyer to the client;
3.  the lawyer's breach of duty; and
4.  damage to the client proximately caused by the breach of duty.

*CONFLICT OF INTEREST.* Representing another person with adverse interests may constitute a breach of an attorney's standard of care or duty owed to a person found to be a client of an attorney.

▆ [¶ 15] The evidence supports the jury's finding the actions by Maus and the law firm at the November 13, 1992, meeting constituted legal malpractice, a conflict of interest, and a breach of a fiduciary duty. The plaintiffs' expert essentially testified Maus had a conflict of interest in representing both the buyer and seller of land at the November 13, 1992, meeting, and Maus should have advised Dorothy Murphy to seek independent counsel. Viewed in the light most favorable to the verdict, the plaintiffs' expert's testimony supports the jury's finding of negligence and breach of a fiduciary duty. That conclusion, however, does not end our inquiry, because there also must be evidence to raise a factual issue that the defendants' negligence and breach of fiduciary duty

proximately caused damage to the plaintiffs. *See Wastvedt,* 430 N.W.2d at 567.

▆ [¶ 16] The plaintiffs argue the $220,000 awarded by the jury represents partnership payments for rent of the 400 acres of land at $40,000 per year for five and one half years from 1994 through the trial in 1999. The plaintiffs argue, without Maus' conflict of interest and failure to advise Dorothy Murphy to seek independent counsel, they would not have sold the 400 acres to Tom and Red Murphy and Dorothy Murphy would have been entitled to $40,000 per year in land rent from the partnership for the rest of her life.

▆ [¶ 17] In *Wastvedt,* 430 N.W.2d at 567, this Court applied the "case within a case" doctrine to determine whether an attorney's conflict of interest was the proximate cause of damage to a client. The case-within-a-case doctrine requires that, but for the attorney's alleged negligence, litigation would have ended with a more favorable result for the client. *Id. See Johnson v. Jones,* 103 Idaho 702, 652 P.2d 650, 655 (1982); *Lange v. Marshall,* 622 S.W.2d 237, 239 (Mo.Ct.App.1981). In *Wastvedt,* at 563, an attorney represented a buyer and the stockholder plaintiffs in the sale of the stockholders' stock in a bank under a sale agreement in which the buyer ultimately agreed to buy 51 percent of the stock for a total price of $300,000. Because the bank held several bad loans, the sale agreement included a provision for a reduction in purchase price based on the bank's write-off of certain loans. *Id.* The stockholders received a $75,000 down payment, but did not receive the remaining $225,000 because comptroller reports wrote off an equivalent sum of substandard, doubtful, or loss loans. *Id.* at 563–64. The stockholders sued the attorney, claiming his conflict of interest proximately caused them $225,000 in damages. After the stockholders obtained a favorable ver-

dict, the trial court granted judgment notwithstanding the verdict, concluding there was no evidence the attorney's conflict of interest proximately caused damage to the stockholders. *Id.* at 564.

[¶ 18] This Court affirmed the judgment notwithstanding the verdict. *Wastvedt,* 430 N.W.2d at 568. This Court recognized proximate cause and damages are ordinarily questions of fact, but concluded there was no evidence from which the jury could have concluded the attorney's conflict of interest proximately caused damage to the stockholders and the evidence led to only one conclusion about which there could be no reasonable difference of opinion:

> the plaintiffs received only $75,000 for their stock because the $225,000 balance was eliminated by operation of the write-off clause. The plaintiffs presented no evidence to establish that, but for [the attorney's] conflict of interest, they would have received the $225,000 balance or a different price for their stock. There was no evidence that an attorney with no conflict of interest would have procured a different result for the plaintiffs. There was no evidence that another buyer would have bought fifty-one percent of the Bank without the write-off clause, that another buyer would have paid more per share for control of the Bank in a transaction with a similar write-off clause, or that the inclusion of the write-off clause in the Stock Purchase Agreement was improper. Although there was evidence that some other shares of stock in the Bank were sold for about $200 per share in August 1981, ... and in August 1982, when [the buyer] sought to maintain confidence in the failing bank, there was no evidence that those sales involved control of the Bank or included a similar write-off provision. One of the potential buyers of fifty-one percent of the Bank ... testi-

fied briefly at trial, but he did not testify about the price, terms, or conditions under which he or his group would have purchased the Bank. Another potential buyer ... did not testify at trial. We disagree with the plaintiffs' assertion that it would have been an impossible burden for them to have presented evidence concerning the terms and conditions under which those purchasers would have bought the Bank when, as they assert, all individuals, other than [the buyer], were deprived of the opportunity to analyze facts concerning the Bank. Either one of the two potential buyers ... could have analyzed the Bank's position in preparation for trial and testified about the price, terms, or conditions under which he would have purchased the Bank.

*Wastvedt,* at 568.

[¶ 19] Here, the trial court instructed the jury on proximate cause in language consistent with *Wastvedt.* The trial court instructed the jury, in part:

> *PROXIMATE CAUSE—FAILURE OF PERFORMANCE TO ACT.* Where the plaintiff claims that a lawyer negligently failed to perform some act on behalf of the client, plaintiff must prove by the greater weight of the evidence that if the lawyer had performed the act, it would have been beneficial to the client.
>
> *SPECULATION AS TO PROXIMATE CAUSE.* The plaintiffs have the burden of proof of establishing the proximate cause of its damages. A verdict in favor of the plaintiffs may not be based merely on conjecture or speculation.

Although the parties have framed the issue as whether there was evidence the 22 percent payment was for land rent, the issue is whether the defendants' actions at the November 13, 1992, meeting proximately caused damage to the plaintiffs. The

plaintiffs' argument is premised on their expectation that Dorothy Murphy would receive the 22 percent from the partnership, whether denominated as gross cattle proceeds or land rent, for the rest of her life.

[¶ 20] The February 15, 1991, partnership agreement, however, does not require the partnership to make the 22 percent payments to Dorothy Murphy for the rest of her life. Rather, the partnership agreement states:

> The gross proceeds from the sale of livestock of the partnership, shall go 74% to the partnership account, 22% to Dorothy Murphy, 3% to Hugh R. "Red" Murphy and 1% to Tom Murphy. All other profits and all losses shall be allocated equally between the two partners each year.

Nothing in the written partnership agreement required the partnership to continue indefinitely, or to make payments to Dorothy Murphy if the partnership dissolved. The partnership agreement named two partners, Red and Tom Murphy, to equally share in management of the ranch, and said the initial capital contributions for the partnership were property equally contributed by Red and Tom Murphy. The partnership had an "indefinite [duration], unless sooner terminated by mutual consent of the parties or by operation of the provisions of the agreement." The partnership agreement included specific provisions regarding voluntary dissolution of the partnership, withdrawal of a partner, and the death of a partner. Tom and Red Murphy agreed to terminate the partnership in 1994, and Red Murphy died in May 1994. The plaintiffs have cited no evidence obligating the partnership to continue the payments to Dorothy Murphy after the dissolution of the partnership. As a matter of law, the plaintiffs were not entitled to the 22 percent payment, whether denominated as land rent or proceeds from cattle, from the partnership after dissolution of the partnership. The plaintiffs have raised no issues about the trial court's dismissal of their claims involving the February 1991 drafting of the partnership agreement, see fn.1, and they have presented no evidence to support a legal basis for the partnership to make the 22 percent payments to Dorothy Murphy for the rest of her life. Under the trial court's previous rulings, which limited the liability issue to the November 13, 1992, meeting, we conclude there is no evidence to support a finding that the conduct of Maus and the law firm at the November 13, 1992, meeting proximately caused the plaintiffs $220,000 in damages.[2]

### IV

[¶ 21] We affirm the trial court judgment.

WILLIAM A. NEUMANN, Acting C.J., GERALD G. GLASER and WILLIAM F. HODNY, S.JJ., and EVERETT NELS OLSON, D.J., concur.

The Honorable HODNY, S.J., the Honorable GLASER, S.J., and the Honorable OLSON, D.J., sitting in place of VANDE WALLE, C.J., MARING, J., and KAPSNER, J., disqualified.

---

**2.** When the plaintiffs sold the 400 acres to Red and Tom Murphy in 1992, the plaintiffs received $51,035, which represented a 1989 appraised value for the land. At trial, the plaintiffs presented evidence the land had an appraised value of $74,544 in 1992. The plaintiffs have not argued for a damage award based on the difference between the $51,035 they received for the land and a different value for the land, or on a fair market rental value for the land.